UNITED STATES of America, Appellee,

v.

Horace GRAYDON, Jr., Appellant.

UNITED STATES of America, Appellee,

v.

Richard Burris GRAYDON, Appellant.

Nos. 13569, 13596.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 4, 1970.

Decided July 29, 1970.

Fred Warren Bennett, Washington, D. C., court-appointed counsel (J. Joseph Curran, Jr., Baltimore, Md., court-appointed counsel, on brief) for appellants.

Paul M. Rosenberg, Asst. U. S. Atty. (Stephen H. Sachs, U. S. Atty., on brief) for appellee.

Before SOBELOFF, BOREMAN and BRYAN, Circuit Judges.

BOREMAN, Circuit Judge.

Horace Graydon, Jr., and his brother, Richard Burris Graydon (hereafter defendants or appellants), appeal from their convictions by a jury upon all counts of a three-count indictment charging them with bank robbery, assault, and assault while committing a bank robbery, in violation of 18 U.S.C. § 2113(a) (b) (d). Horace was sentenced to imprisonment for a term of twenty years and Richard for a term of ten years. From their convictions and resultant sentences they prosecute these consolidated appeals. We affirm.

Appellants allege that the trial court erred in the following respects: (1) denying their motions for judgments of acquittal; (2) permitting the government attorney to exceed permissible bounds in his closing argument to the

jury in that he suggested that appellants' alibi witnesses had given false testimony; (3) allowing the government attorney on cross-examination to interrogate appellants about their financial condition and to argue to the jury that a poor financial condition provides a possible motive for bank robbery; (4) giving the jury an "Allen" type charge.

■ A thorough examination of the record discloses that the first two assignments of error are clearly without merit and need not be discussed.

Appellants' third assignment of error concerns the permission given to the government's attorney to cross-examine both defendants concerning their financial condition, and to argue to the jury for the first time during closing argument that evidence of defendants' poor financial condition may be properly considered as establishing a motive for bank robbery.

At the trial, both defendants testified in their own behalf. On *direct* examination Horace Graydon testified that he was employed at the time of the robbery in question in a government program known as Project Build, and Richard Graydon testified that he had been honorably discharged from the United States Army some five and one-half months prior to the date of the robbery, that he had earned $211.50 per month prior to his discharge, that he had purchased United States Savings Bonds on a regular monthly basis while in the service, that he had accumulated a savings account of approximately $1,100.00 at the time of his discharge, that he had received $52.00 per week unemployment compensation during four of the five months he had been out of the service, that he expected to obtain work with the Post Office Department, and that on the day of the robbery he had made a $1,000.00 down payment toward the purchase of a 1965 Cadillac on which he was to make payments of over $90.00 per month.

On cross-examination, the government's attorney merely questioned the defendants in connection with their financial condition, since that subject had been referred to on direct examination. It was determined that Horace Graydon had been working for Project Build for approximately four weeks prior to the robbery and had earned only $110.00 during this time. It also was learned that Richard Graydon's savings account had been greatly depleted by the down payment on the 1965 Cadillac, that he did not know whether he had cashed in all of his savings bonds, and that he had falsified the credit application which he submitted when he bought the new car.

This pattern was repeated on the redirect and re-cross examinations, and again during the closing arguments. The government attorney's questioning and argument pertaining to the defendants' need merely responded to their evidence and argument as to their adequate financial condition. While it is true that this evidence was directly tied to the question of motive for the first time during the rebuttal argument by the government's attorney, the court noted this and permitted the defense to reply to that portion of the rebuttal argument, thereby nullifying any unfair advantage which the prosecution might have gained.

■ At no time did defense counsel object to the information elicited on cross-examination or to the argument presented during rebuttal. Defendants raise the issue here for the first time, urging that it was "plain error" to permit the now challenged cross-examination and argument. The rationale of their argument is found in a statement from II Wigmore on Evidence, § 392, at 341 (3rd ed. 1940):

(2) (a) The *lack of money* by A might be relevant enough to show the probability of A's desiring to *commit* a *crime* in order to obtain money. But the practical result of such a doctrine would be to put a poor person under so much unfair suspicion and at such a relative disadvantage that for reasons of fairness this argument has

seldom been countenanced as evidence of the graver crimes, particularly of violence * * *.

While courts have long recognized the commitment of the law to "bridge the chasm between 'poor man's' and 'rich man's' justice," Davis v. United States, 133 U.S.App.D.C. 167, 409 F.2d 453, 458 (1969), it is unnecessary for us to rule at this time on the broad question of the admissibility of evidence showing a defendant's poor financial condition to prove a motive to commit crime. Upon the facts in the instant case, we need decide only that, after a defendant accused of robbery has submitted evidence tending to show that he was not in need of money, the extension of the scope of cross-examination to show that the defendant was in a poor financial condition, in the absence of an objection thereto, does not constitute "plain error" requiring reversal. *See* Davis v. United States, 133 U.S.App.D.C. 167, 409 F.2d 453 (1969); United States v. Mullings, 364 F.2d 173, 175 n.2 (2 Cir. 1966). *See also* footnote 5 to the above cited section of Wigmore on Evidence which adds that, "But when a defendant * * * seeks to show that his possession of money deprived him of any motive for crime, the fact may of course be *disproved* by the prosecution. * * *"

Finally, we turn to appellants' assignment of error concerning the court's "Allen charge" to the jury. The jury began deliberation at 4:04 p. m. on the third day of the trial. At 10:45 p. m. the trial court, having been told that the jury had been unable to reach a verdict with respect to either defendant on any count, gave a supplemental instruction of the type commonly referred to as an "Allen charge." The jury then retired to continue their deliberations, and at 11:31 p. m., reached a verdict of guilty as to each defendant.

Appellants complain specifically about language in the charge to the effect that, "If you should fail to agree on a verdict, the case must be retried." They maintain that such language had a coercive effect on those jurors in the minority and cite United States v. Harris, 391 F.2d 348 (6 Cir. 1968), cert. den., 393 U.S. 874, 89 S.Ct. 169, 21 L.Ed.2d 145 (1968), a case wherein the judgment was reversed because of the inclusion in the "Allen charge" of similar language. In that case, however, the instruction complained of on appeal was objected to by defense counsel at trial. In the instant case, no such objection was made. Indeed, it appears from the record that the instruction that was given was discussed and approved in advance by the court, the government and the defense attorneys.[1]

■ Appellants assert, however, that despite their failure to object, the language of the instruction constituted "plain error" which may be noticed although not brought to the attention of the district court. Fed.R.Crim.P. 52(b).[2] This court has ruled, with respect to instructions, that Rule 52(b) must be read in conjunction with Fed. R.Crim.P. 30,[3] and has held that "[I]t

---

1. The following colloquy took place between government counsel and the court after the jury had left the courtroom to resume deliberations. Defendants' counsel were present but made no comment.
   MR. ROSENBERG: [Assistant U. S. Attorney] Your Honor, I would just like to put on the record that, so far as I know, neither counsel had any objection to the charge, as given.
   THE COURT: No, we discussed it, and the shorter form was preferred by everybody * * *.
   MR. ROSENBERG: Thank you, Your Honor.

2. Rule 52(b), Fed.R.Crim.P.
   *Plain Error.* Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

3. Rule 30, Fed.R.Crim.P.
   At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to adverse parties. The court

was never intended that Rule 52(b) be applied in such a way as to destroy Rule 30, which provides that no party may assign as error any portion of the charge to the jury unless he objects thereto before the jury retires stating distinctly the matter to which he objects and the grounds of his objection." United States v. Ostendorff, 371 F.2d 729, 731 (4 Cir. 1967), cert. den., 386 U.S. 982, 87 S.Ct. 1286, 18 L.Ed.2d 229 (1967); accord, United States v. Jones, 340 F.2d 599, 601 (4 Cir. 1965), cert. dis., 381 U.S. 907, 85 S.Ct. 1456, 14 L.Ed.2d 430 (1965). We are aware that this court has in the past reversed a criminal conviction where an "Allen charge" was clearly coercive despite the defense attorney's failure to object to the charge. United States v. Smith, 353 F.2d 166 (4 Cir. 1965). In that case, however, at page 168, the court expressed its disapproval of the charge for the reason that it did not adequately "inform the jurors of their duty of dissent if dissent is founded upon reasoned conclusions reasonably arrived at and reasonably held," an ameliorating admonition which the court had characterized in an earlier decision[4] as the "reminder that makes the Allen charge tolerable in the first place." In the present case there was no such failure to so inform and admonish the jurors.[5]

We hold the language complained of here not so clearly coercive as to warrant overriding the provision of Rule 30 against an assignment of error on appeal based on an instruction to which no objection was made in the trial court.

Affirmed.

shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. *No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.* Opportunity shall be given to make the objection out of the hearing of the jury and, on request of any party, out of the presence of the jury. As amended Feb. 28, 1966, eff. July 1, 1966. (Emphasis added.)

4. United States v. Rogers, 289 F.2d 433, 436 (4 Cir. 1961).

5. A modification to that effect was expressly inserted in the charge to conform to language in the opinion of Judge Soboleff in Rhodes v. United States, 282 F.2d 59 (4 Cir. 1960), which was also approved in *Smith, supra,* at 168.