UNITED STATES of America, Appellee,

v.

Milton L. McCASKILL, Appellant.

No. 81–5110.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 6, 1981.

Decided April 15, 1982.

Rehearing Denied May 28, 1982.

George R. Hodges, Charlotte, N. C. (Moore & Van Allen, Charlotte, N. C., on brief), for appellant.

Harold J. Bender, Asst. U. S. Atty., Charlotte, N. C. (Harold M. Edwards, U. S. Atty., Asheville, N. C., on brief), for appellee.

Before RUSSELL, ERVIN and CHAPMAN, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

This appeal arises out of the defendant's conviction under three counts of an indictment charging him under § 2, 18 U.S.C. with aiding and abetting in violations of Sections (a), (b) and (d), of the federal bank robbery statute, § 2113, 18 U.S.C. The defendant has appealed only from his conviction under count three of the indictment relating to the charge under §§ 2113(d) and 2. He raises as his single ground of appeal the district court's alleged failure properly to instruct the jury.

At trial the defendant's counsel submitted a request for certain instructions among which was one that, in a prosecution for aiding and abetting a bank robbery under §§ 2113(d) and 2, the jury should be instructed that "the government must prove not only that the Defendant knew that a bank was to be robbed and [that the defendant] became associated with and participated in that crime, but also that the Defendant knew that the criminals were armed and intended to use their weapons, and that he intended to aid them in that respect." He cited *United States v. Short*, 493 F.2d 1170 (9th Cir. 1974), as authority for the quoted requested instruction. The district judge stated that the requested instructions, including those not in dispute here, would be given in substance by him in his instructions to the jury.[1] After the

---

1. This ruling was endorsed on the proposed instructions above the district judge's initials. The actual notation was:

"Will be given in substance- 4/8/81. W.W. J."

A similar notation appears on the Clerk's records of proceedings:

completion of the testimony and arguments of counsel, the district judge instructed the jury.

In his instructions the district court set forth the elements of an offense under § 2113(d). He very specifically instructed the jury that the charge required proof that the robbers had "enter[ed] a bank carrying a weapon or something which appear[ed] to be a weapon saying that if you don't give me your money, I'll inflict serious harm upon you or making any reference at all to the use of force . . . ." The district judge then instructed the jury that, if you find that the robbers in the course of this robbery had "assaulted [the] bank employees by putting their lives in jeopardy by the use of or the threatened use of deadly weapons," it should proceed to determine "whether or not the defendant aided and abetted [the actual robbers] in the commission of such acts." He thereupon stated the circumstances under which it could be said the defendant had aided and abetted the robbers under § 2, 18 U.S.C.: "The Court instructs you that in order to aid and abet another to commit a crime it is necessary that the accused, that is, the defendant in this case, willfully associated himself in some way with the criminal venture, that is, the bank robbery, and willfully participated in it as he would in something he wishes to bring about, that is to say that he willfully seeks by some act or omission of his own to make the criminal venture succeed and that

an act is willfully done if done voluntarily and intentionally and with specific intent to do something the law forbids . . . ."[2]

■ At the conclusion of the charge, in which was included an extremely fair statement of the defendant's own contentions, the district judge addressed counsel for the defendant, inquiring whether there were "[a]ny requests for additional instructions to the jury from the defendant?" The defendant's counsel replied, "No, sir." The district judge went on to inquire whether the defendant had "[a]ny objections to the instructions?" Again, counsel for the defendant responded, "No, sir." However, the defendant now contends in this appeal that the district judge should have instructed the jury as requested in his proposed instruction that the Government had to prove that the defendant knew that his co-defendants (the actual robbers) "were armed and that they" intended to use their weapons, and that he intended to aid them in that respect. Since he did not raise this objection properly at the conclusion of the district judge's charge, the defendant concedes that such failure to charge will support reversal only if that failure is held to be clear error.[3] The defendant, however, claims that this failure to instruct was clear error citing *United States v. Short, supra,* and *United States v. Sanborn,* 563 F.2d 488 (1st Cir. 1977) as authority for such contention. This claim of error is the sole issue on appeal.

"The defense rests. FILED: Defendant's (written) request for specific jury instructions, which the court states will be given in substance."

2. This statement appears to follow *United States v. Weil,* 561 F.2d 1109, 1112 (4th Cir. 1977); *United States v. Eberhardt,* 417 F.2d 1009, 1012–13 (4th Cir.), cert. denied 397 U.S. 909, 90 S.Ct. 907, 25 L.Ed.2d 90 (1970); *United States v. Carrier,* 344 F.2d 42, 46 (4th Cir. 1965); and *Tarkington v. United States,* 194 F.2d 63, 68 (4th Cir. 1952).

3. This concession was proper. As the defendant recognized, the fact that the defendant had earlier submitted a requested instruction setting forth his contention, which request was not expressly refused, does not, as we point out in greater detail later, preclude compliance with the requirement of Rule 30, Fed.R.Crim.P., that a defendant must object at the conclusion

of the trial judge's charge, since any objection at that time might result in the curing of any error in the charge, if any there was and in the avoidance of any need for further judicial procedure.

See *United States v. Ramirez,* 608 F.2d 1261, 1268 (9th Cir. 1979); *United States v. Hollinger,* 553 F.2d 535, 545 (7th Cir. 1977); *United States v. Gratton,* 525 F.2d 1161, 1162 (7th Cir. 1975). In *Gratton,* the Court said:
"The mere offer of the instruction does not preserve the error for appeal. If the party whose tendered instruction is refused fails to object to the refusal, stating distinctly the grounds of his objection, the Court of Appeals may review the refusal to instruct only to determine whether it constitutes plain error within the meaning of Fed.R.Crim.P. 52(b)."

We may assume for purposes of this appeal that under both *Short* and *Sanborn*, one charged as an aider and abettor under § 2113(d) should be entitled, if the point be timely raised, and if the essential facts be in dispute, to an instruction that the defendant knew that his co-defendants who perpetrated the actual robbery were armed, thereby putting the defendant on notice of the likelihood that in the common criminal enterprise a gun or other dangerous weapon would be used. While it may appear somewhat unreasonable to assume that any one would undertake to rob a bank without a gun or other intimidating weapon, it is the rule as stated in *Short* and *Sanborn* that one charged as an aider and abettor under § 2113(d) should be shown to have known that his confederates in crime were armed and thus likely to jeopardize lives in the course of the robbery by the use of their weapons.[4] But all this reasoning rests upon the assumption that there is a genuine dispute in the record whether the one charged with being an aider and abettor had knowledge that his co-defendants, the robbers, were armed when they embarked upon their act of "sticking up" the bank. That this is the necessary predicate upon which the rule in these two cases rests is manifest in the analysis used by the court in both cases and in the statement by the court of the actual question decided in those cases.

In *Short* the court charged the jury that a defendant, indicted as an aider and abettor in an armed bank robbery, need only know "that a bank robbery was going to be attempted or accomplished" by his co-defendant to be guilty and this is so "whether or not he knew that [the actual robber] was armed or what he was armed with" since this latter fact "is not necessary, not a necessary element to the crime." 493 F.2d at 1172. It was that instruction which the defendant, under the facts of that case claimed to be, and the court found, erroneous. In *Sanborn*, the court, at two points in its opinion, made clear that this was the specific question it was addressing: First, the court said explicitly that the question before it was "whether the court erred in declining Sanborn's requested instruction that his knowledge of the gun had to be proven." Later in the same paragraph, the court again identified the specific question it was answering by its decision:

> "*Still, if the accomplice's knowledge of the weapon forms part of the Government's burden of proof in establishing the aiding and abetting of an armed robbery*, it would be error for the trial court not to so advise the jury upon request. We must, therefore, decide that question." (Italics added) 563 F.2d at 490.

In answering the question as phrased by the court in these two statements, the court in *Sanborn* said that the Government must show that the defendant "was on notice of the likelihood that a gun or other dangerous weapon would be used in the robbery." But it suggests that such "notice of the likelihood" of the use of the gun may be inferred from knowledge of the possession of the gun by the confederate robber. And it adds that had there been an instruction along this line, it "would have no hesitancy whatever in affirming the present conviction" but, "[a]bsent any such instruction following upon defendant's explicit request," it felt obliged to reverse. 563 F.2d 491.

As this review of the facts in those cases shows, the ruling in both *Short* and *Sanborn* arose only because the evidence was in dispute in those cases as to whether the one charged as an aider and abettor was aware that his robber confederate was armed and thus likely to use his weapon in connection with the robbery. If the evidence is not in dispute on the knowledge of the aider and abettor, the question resolved in those cases does not arise.[5]

4. The court in *Sanborn*, however, was at pains to emphasize that it was not deciding that "knowledge of use of a weapon, as opposed to use itself" is a "part of the statutory definition under 2113(d)" or that failure to instruct that knowledge of possession of a weapon by the robber himself was plain error. 563 F.2d at 491, n.4.

5. This fact was also emphasized in *United States v. Methvin*, 441 F.2d 584, 586 (5th Cir. 1971), *cert. denied*, 404 U.S. 839, 92 S.Ct. 130,

Contrary to the facts in *Short* and *Sanborn*, however, there is no dispute in this case that the defendant did know that his confederates who perpetrated the robbery were armed. For several days before the bank robbery, the defendant had been riding around with his co-defendants Jackson and Tijuan McCaskill in Jackson's Cadillac Eldorado. In the course of these rides, these co-defendants—Jackson, in particular—discussed, in the presence and hearing of the defendant, their prior ventures in crime, including bank robbery. The defendant so testified. Thus, Jackson and Tijuan McCaskill were known to the defendant to be persons with criminal experience. The talk among the three related at times to a criminal venture in which the three would engage and in which the three would share equally. That venture discussed among the three was one "to stick up a bank." Such a venture certainly would contemplate the use of some weapon with which "to stick up" the bank. And the defendant's co-defendants had such weapons. Both were armed, one with a 38 Smith & Wesson gun and the other with a 6 millimeter automatic.[6] The defendant knew his co-defendants had these guns or, as he said, were "carrying the guns." He so admitted to the FBI investigator and has never contradicted this admission. Not only did the defendant know of the plan "to stick up a bank" and of the ability of his co-defendants, with their guns, to do this but, in addition, he knew, by his own admission, the bank which was to be "stuck up." He admitted that the Bessemer City bank had been identified in the conversation of the three as a "sweet lick," which the defendant said he understood to mean that such bank "looked like a good place to rob." Moreover, the parties agreed among themselves, including the de-

fendant, that the monies gotten in the proposed robbery of this "sweet lick" should be divided three-ways, with the defendant receiving one-third.

Having made this plan "to stick up a bank," the three got together in Jackson's Cadillac Eldorado on the morning of the robbery. After riding around for a while, they "proceeded to Bessemer City, circled the bank [which represented the 'sweet lick'], checked it out," and then parked their car a short distance away from the bank. The defendant was told to wait in the car for them, providing the robbers with a getaway car after sticking up the bank. The defendant's co-defendants proceeded to the bank. In his confession given the FBI, which the defendant never repudiated or impeached, he said that "he knew that both Jackson and Tijuan McCaskill [his co-defendants] were carrying pistols when they went into the bank." On cross-examination, the investigator—again without contradiction from the defendant—repeated this account of the defendant's confession, adding: "He [referring to the defendant] said he didn't see the guns when they went in the bank. He knew they had them and had been carrying them for several days." It is difficult to envision clearer proof of knowledge on the part of the defendant that the criminal venture in which he and his two co-defendants were engaged was "to stick up a bank" and that his co-defendants who were to do the actual "sticking up" had the guns with which to effect this object. The evidence of a planned *armed* robbery of a bank, in which the role of the defendant was to be that of the driver of the getaway car as he himself confessed, is thus overwhelming.

---

30 L.Ed.2d 72, where the defendant, charged as an aider and abettor, was held not to be guilty under 2113(d) because his "intent to participate [in the bank robbery] was formed and the offense completed without his knowing that a pistol would be used in the process."

In *United States v. Ferreira*, 625 F.2d 1030, 1032 (1st Cir. 1980), it was said that in order to convict the defendant in that case as an aider and abettor of armed bank robbery, "it must be

shown that he knew that the sawed-off shotgun would be used or that he at least had knowledge of the likelihood of its use."

To the same effect is the dictum in *United States v. Longoria*, 569 F.2d 422, 425 (5th Cir. 1978).

6. The type of weapons carried by Jackson and Tijuan McCaskill was given by Tijuan McCaskill in his testimony.

After the co-defendants had "stuck up the bank," they seized a car adjacent to the bank, drove it hastily the short distance to the point where the defendant was awaiting them. They jumped into the car. The defendant, who was seated in the driver's seat with the ignition on, drove off. As he was proceeding out of town, a fast moving police car driven by officer Huffstetler, responding to a report of the bank robbery from the Bessemer City police department, passed him going in the direction of the bank. As the driver of the police car passed the defendant, he observed that the car and the occupants seemed to match the description given by those about the bank at the time of the robbery and passed on to him by the Bessemer City police department.[7] The officer turned his car around and began to pursue the car driven by the defendant. The defendant saw the police car in pursuit. He sought, by accelerating dangerously his speed and maneuvering among the streets, to evade the pursuing officer while his co-defendant McCaskill began shooting at the pursuit car. The defendant, identified by officer Huffstetler, as the driver of the Eldorado, was driving at a speed in excess of ninety miles an hour but,[8] as he sought to maneuver at that speed in a shift from one road to another, he lost control, sped off the road and turned over.[9] His co-defendants began shooting at the pursuing officer but, when reinforcements arrived, all three

of the defendants surrendered. It was after their arrest that the defendant gave his confession.

The defendant did seek to excuse his part of the robbery by declaring that "he did not go into the bank himself and did not take part in that part of the robbery" but he admitted he was the "driver of the getaway car." The defendant seemed to assume that if he had not been in the bank at the time of the actual armed robbery, even though he had known of the plan to "stick up" the bank, and knew that his co-defendants were armed "when they went into the bank," he could not be convicted, despite the fact that he waited in the driver's seat in the car until the two robbers returned and then immediately drove them off in the planted getaway car. However, as the court said in *United States v. Von Roeder*, 435 F.2d 1004, 1010 (10th Cir. 1971), *cert. denied*, 403 U.S. 934, 91 S.Ct. 2264, 29 L.Ed.2d 713:

> "The escape phase of a crime is not, . . . an event occurring 'after the robbery.' It is part of the robbery. One who participates in and assists in the escape of the parties who were in the bank aids and abets the bank robbery . . . ."[10]

■ Nor is it important that the defendant himself was unarmed or that his role was only that of the driver of the getaway car; he still was properly convicted of arm-

7. A young lady, Sara Denise Adams, was driving by the bank just before the robbery. She observed the defendants in a gray and black Cadillac Eldorado going up the alley behind the bank. The action of the car caught her attention. Shortly thereafter she returned to the bank to cash a check at apparently a drive-in window. She saw the two robbers. She immediately drove to the police station and told the police chief "the bank was being robbed" and that the robbers "might be traveling in a gray and black Eldorado." This reinforced other information the police authorities had. This information had been broadcast on the police radio and had been heard by officer Huffstetler, thereby causing him to rush toward the scene of the robbery.

8. Officer Huffstetler testified that he "glanced at my speedometer twice [during the chase] and both times I was exceeding ninety miles an hour and they were still pulling off from me."

9. The officer's account of this pursuit, which was undisputed by the defendants, was:

> "When I spotted them, I turned around in front of the REA Building and proceeded to give chase. They turned off Highway 274, down 275 towards Dallas. They went about a half block and turned left on Fairview Extension, running the stop sign at Fairview Extension, onto White and Jennings Road, then proceeded on White and Jennings Road at a high rate of speed for over a mile and a half estimated, before they attempted to turn back on Shuford Road where they wrecked."

10. *See to the same effect, United States v. Willis*, 559 F.2d 443, 444 (5th Cir. 1977); *United States v. Reid*, 517 F.2d 953, 965 (2d Cir. 1975).

ed robbery when he admitted "he knew [that] others he identified as robbers [with whom he was associated in the criminal enterprise] were armed with guns." This was clearly declared in *United States v. Johnson*, 390 F.Supp. 1049 (E.D.N.Y.1975), *aff'd.*, 525 F.2d 999, *cert. denied*, 424 U.S. 920, 96 S.Ct. 1127, 47 L.Ed.2d 327 (1976), where the defendant had acted merely as a guard while others actually committed the armed robbery. In finding him guilty of armed robbery the court said (390 F.Supp. at 1056, n.5):

> "Although the defendant's confession shows that he was unarmed, his other statements make it clear that he knew others he identified as robbers were armed with handguns. Defendant is therefore guilty as a principal as charged in Count Two [i.e., the charge under 2113(d) ]." [11]

■ Accordingly, even if *Short* and *Sanborn* are correct that a district court should instruct the jury that, as a basis for conviction as an aider and abettor in an armed bank robbery, the defendant must be shown to have known that his confederates were armed at the time of the robbery and that, the omission of such an instruction, when properly demanded, warrants reversal, such authorities are inapplicable here, where there is no question that the defendant had such knowledge. That is exactly what was held in *United States v. Johnson, supra*, 390 F.Supp. at 1056, n.5. In that case, the defendant's knowledge that his co-defendants "were armed with handguns" was sufficient to establish his guilt as a "principal" in the armed robbery. That is the critical distinction between *Johnson* and this case, on the one hand, and *Sanborn* and *Short*, on the other: Here the defendant knew his co-defendants were armed "when they entered the bank." That knowledge, undisputed by the defendant, made him responsible as a principal in the armed robbery.

The crime of armed robbery, so far as the defendant was concerned, was complete. There was under those circumstances no need, as there may have been in *Sanborn* to instruct the jury, "that his (i.e., the defendant's) knowledge of the gun had to be proven." 563 F.2d 490. That was a fact the defendant admitted and was overwhelmingly established.

■ There is another and an even more compelling reason why neither *Short* nor *Sanborn* is applicable here. In both of those cases, the failure to instruct that the government should prove the defendant's awareness of the possession of a gun by his confederates in order to establish an aiding and abetting charge was timely objected to; in this case, it is admitted that the defendant did not make a proper and timely objection. Even if the district court erred in failing to include an instruction in this case that the jury must find that the defendant had knowledge that his confederates were armed when they entered the bank, it is settled law that a defendant is precluded from relying on such error because of his own failure to object to the omission in the manner prescribed by Rule 30 of the Federal Rules of Criminal Procedure, unless it can be fairly said that the district judge's failure under the facts of that case so to instruct was plain error within the meaning of Rule 52(b), Fed.R.Crim.P., *United States v. Whiting*, 311 F.2d 191, 197–98 (4th Cir. 1962).[12] Rule 52(b), Fed.R.Crim.P., which permits an appellate court to notice "[p]lain errors or defects affecting substantial rights . . . although they were not brought to the attention of the court," however, "was never intended . . . [to] be applied in such a way as to destroy Rule 30, which provides that no party may assign as error any portion of the charge to the jury unless he objects thereto before the jury retires stating distinctly the matter to which he objects and the grounds of his objection."

---

11. *To the same effect, see State v. Bettis*, 109 Ariz. 579, 514 P.2d 712, 713 (1973); *Whitten v. State*, (Alaska) 479 P.2d 302, 315 (1970).

12. *To the same effect* is *United States v. Bryant*, 612 F.2d 799, 803 (4th Cir.), *cert. de-* nied, 446 U.S. 919, 100 S.Ct. 1855, 64 L.Ed.2d 274 (1980); *United States v. Newkirk*, 481 F.2d 881, 883 (4th Cir.), *cert. denied*, 414 U.S. 1145, 94 S.Ct. 897, 39 L.Ed.2d 100 (1974).

*United States v. Ostendorff*, 371 F.2d 729, 731 (4th Cir. 1967), *cert. denied*, 386 U.S. 982, 87 S.Ct. 1286, 18 L.Ed.2d 229; *United States v. Bryant, supra*, 612 F.2d 803; *United States v. Graydon*, 429 F.2d 120, 123–24 (4th Cir. 1970); *United States v. Jones*, 340 F.2d 599, 600 (4th Cir. 1965), *cert. dismissed*, 381 U.S. 907, 85 S.Ct. 1456, 14 L.Ed.2d 430; *United States v. Lawrenson*, 298 F.2d 880, 884 (4th Cir. 1962), *cert. denied*, 370 U.S. 947, 82 S.Ct. 1594, 8 L.Ed.2d 812; *United States v. Gerald*, 624 F.2d 1291, 1300 (5th Cir. 1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1369, 67 L.Ed.2d 348; *United States v. Simmons*, 281 F.2d 354, 356 (2d Cir. 1960). Accordingly, the plain error rule, 52(b), as an exception to the requirement mandated under Rule 30, is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,"[13] or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused,"[14] or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' "[15] or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings"[16] or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."[17]

■ As the Supreme Court said in *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977), "[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court,"[18] on the basis of the "plain error" exception in Rule 52(b). *See also to the same effect, United States v. Tom*, 640 F.2d 1037, 1041 (9th Cir. 1981); *United States v. Palmeri*, 630 F.2d 192, 201 (3d Cir.), *cert. denied*, 450 U.S. 967, 101 S.Ct. 1484, 67 L.Ed.2d 616 (1981).

Neither can it be said that the failure so to instruct would be clear error where the defendant's awareness that his confederates were armed is admitted. When one's confederates enter a bank armed for the purpose of robbing the bank, the likelihood that the confederates may use their weapons is manifest. There could be no miscarriage of justice arising out of a failure by the district judge to instruct that the jury, in order to convict the defendant in this case, would have to find that the defendant knew his confederates were armed when they entered the bank. The defendant knew his confederates were armed, as he said, when they entered the bank. He had ridden with his confederates on a number of occasions in the days immediately preceding the robbery. He admitted that he knew the confederates were carrying guns on those occasions. There can be no "fundamental error," no "miscarriage of justice," nothing "seriously affect[ing] the fairness, integrity or public reputation of judicial proceedings" in the failure of the district judge in such a case as this to instruct the jury that it must find that the defendant knew his confederates were armed.

We would add that we are by no means certain that the reason the defendant's counsel did not except to the instructions

---

13. *United States v. Coppola*, 486 F.2d 882, 884 (10th Cir.), *cert. denied*, 415 U.S. 948, 94 S.Ct. 1469, 39 L.Ed.2d 563 (1974) (emphasis in text).

14. *United States v. Harper*, 579 F.2d 1235, 1239 (10th Cir. 1978), *cert. denied*, 439 U.S. 968, 99 S.Ct. 459, 58 L.Ed.2d 427.

15. *United States v. Houston*, 547 F.2d 104, 108 (9th Cir. 1976).

16. *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936).

17. *United States v. Jackson*, 569 F.2d 1003, 1010 (7th Cir. 1978), *cert. denied*, 437 U.S. 907, 98 S.Ct. 3096, 57 L.Ed.2d 1137.

18. In its footnote 12, page 154, 97 S.Ct. page 1736, the court in this case said:

"In *Namet v. United States*, 373 U.S. 179, 190 [83 S.Ct. 1151, 1156, 10 L.Ed.2d 278], the Court characterized appellate consideration of a trial court error which was not obviously prejudicial and which the defense did not mention during the trial as 'extravagant protection.' "

given by the district court was that he recognized that those instructions did cover all the elements of the crime of aiding and abetting the commission of an armed robbery under the facts of this case. The instructions may not have been as explicit as he would have liked but the instructions were clearly adequate and warranted no exception. In any event, when it is shown beyond dispute that the actual armed bank robbers, to the knowledge of a defendant, were armed and that the defendant had aided them, whether as a guard, as in *Johnson,* or as a driver of the getaway car as in this case, there is no miscarriage of justice in a jury finding that he is guilty as a principal of the crime of armed robbery under § 2113(d).

Accordingly, the judgment of conviction is

*AFFIRMED.*

ERVIN, Circuit Judge, dissenting:

Because the majority has misconstrued the holdings and the spirit of relevant cases from other circuits and threatens to establish for this circuit an ill-advised rule of law, I respectfully dissent.

The defendant here was convicted of three offenses arising out of a single occurrence: aiding and abetting larceny, as well as bank robbery, and the aggravated offense of armed bank robbery. He has not appealed from the convictions for the first two offenses. The defendant's sole contention is that the district judge committed plain error when he failed to instruct the jury that the defendant could not be convicted of aiding and abetting armed bank robbery unless the defendant knew that the principals possessed and intended to use a dangerous weapon in the commission of the offense. Indeed, the district judge failed to mention the requirement of defendant's knowledge of use of a weapon by the principals. This is the only additional element the prosecution had to prove with respect to the defendant's mental state in order to distinguish the aggravated offense of armed bank robbery from simple bank robbery. The lower court allowed the defendant to

be convicted, instead, of aiding and abetting an armed bank robbery on the basis of exactly the same evidence that was necessary for his conviction for aiding and abetting simple bank robbery. The affirmance by the majority of this panel condones the conviction of the defendant without requiring that the jury find the government has proved every element of the offense.

### I.

The primary ground relied upon by the majority for upholding the conviction is that, contrary to analogous cases in other circuits, there is "direct evidence" here of the defendant's knowledge that guns were going to be used in the robbery. The distinction the majority makes between direct and circumstantial evidence is grasped from thin air. Because there is direct evidence as opposed to convincing or even compelling circumstantial evidence, the majority finds no need for the jury to determine whether an element of the offense is present. I can find no authority for this distinction.

Circumstantial evidence is not inherently less probative than direct evidence, and in some circumstances it is even more reliable. *United States v. Andrino,* 501 F.2d 1373, 1378 (9th Cir. 1974). Direct evidence is not superior to circumstantial evidence; *Vuckson v. United States,* 354 F.2d 918, 920 (9th Cir. 1966); either may lead to a correct or incorrect result, and both must be weighed by the jury in the same manner. *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954). The test for sufficiency of the evidence on appeal is the same whether the evidence is direct or circumstantial. *United States v. Barrera,* 547 F.2d 1250, 1255 (5th Cir. 1977).

The majority claims that the direct, unrefuted evidence in the record establishes that the defendant knew his cohorts were armed and intended to use their weapons in robbing the bank. The majority then finds that in *United States v. Sanborn,* 563 F.2d 488 (1st Cir. 1977), there was a factual dispute as to whether the aider and abettor had knowledge of the intention to use a weapon. I disagree with the contention

that the defendant's earlier statement to the Federal Bureau of Investigation was unrefuted and, therefore, that we may find as a matter of law that he knew the principals were armed when they entered the bank. I disagree, even more strenuously, with the majority's finding that there was more of an issue of fact in *Sanborn* than there is here.

Throughout the trial, the defendant asserted that he knew nothing of the possession of guns by the principals on the day of the robbery until they were being chased by the deputy sheriff during the attempted getaway.[1] If the testimony at trial was inconsistent with earlier statements to the Federal Bureau of Investigation agents, it is a matter of credibility to be considered by the jury. *United States v. Young*, 568 F.2d 588 (8th Cir. 1978). We, as an appellate court, have no authority to make this finding of fact, and on an issue of knowledge or intention the credibility of witnesses is of critical importance. It is possible, indeed, that the jury would have found the defendant's statements at trial, after he had carefully considered the events on the day of the robbery, were more accurate than the cursory response during a Federal Bureau of Investigation interrogation shortly after his arrest.

The majority distinguishes *Sanborn* on the basis of its conclusion that there is direct rather than circumstantial evidence. Because the same weight is to be given direct and circumstantial evidence in this instance, I believe that the factual finding

as to knowledge is perhaps in greater dispute here than it was in *Sanborn*. In that case, the court found that "the circumstantial evidence permitted and, indeed, virtually compelled a conclusion of knowledge"[2] by the accomplice that the principal in the robbery was armed. The First Circuit would not allow itself to make this finding of fact, even though the truth of the fact was compelling, without first allowing the jury to consider this element of the crime. The holding of the case is open to no other interpretation than that a jury instruction must be given as to the element of the defendant's knowledge that a weapon was likely to be used:

> On this record, as already indicated, we would have no hesitancy whatever in affirming the present conviction for the aggravated crime (armed bank robbery) had the court given an instruction that the Government had to establish beyond a reasonable doubt that Sanborn was on notice of the likelihood that a gun or other dangerous weapon would be used in the robbery. Absent any such instruction following upon defendant's explicit request, we are obliged to vacate the judgment of conviction for the aggravated § 2113(d) offense.

*Id.* at 491.

**II.**

The majority's second ground for its holding is that no plain error is evident within the meaning of Fed.R.Crim.P. 52(b). Far from undertaking devious trial tactics as suggested by the majority, the defense at-

---

1. The FBI agent who took the defendant's statement provided the evidence that the majority considers "direct" and conclusive. The majority cites special agent Whitley's verbal testimony that the defendant "knew that both Jackson and Tijuan McCaskill were carrying pistols when they went into the bank." On cross examination, however, it became apparent that this statement was a conclusion rather than a factual recollection of the defendant's statement. Whitley testified that the only direct statements by the defendant were that he knew the principals had been carrying guns in the days prior to the robbery, but he had not seen the guns on the day of the robbery.

2. 563 F.2d at 490. It is obvious that the appellate court was convinced of the defendant's knowledge of the intention to use a gun:

> Not only was there ample evidence from which a jury could infer that Sanborn knew of Kell's use of a gun, but the court in its instructions emphasized that the government had to establish Sanborn's intentional and wilful participation in the act of taking the money by intimidation, assault and jeopardizing the lives of employees. Since the evidence and instructions along these lines turned on Kell's use of the gun, the jury could scarcely have convicted without finding that Sanborn was aware of the gun. [citation omitted.]

*Id.*

torney did not try to withhold any issues from the district court in order to raise them on appeal. The attorney requested an instruction on the state of mind of the defendant regarding the use of firearms and cited *United States v. Short*, 493 F.2d 1170 (9th Cir. 1974) to the court. The attorney's only mistake was in failing to object after the district court instructed the jury.[3]

By holding that the error committed by the trial court was harmless, the majority contradicts the finding in *Short* that this assertion was untenable. The court thoroughly explained its reasoning in *Short*, and the result was more logical than that reached by this circuit today:

> This instruction is erroneous because it fails to require the jury to find an essential element of the crime of armed bank robbery as a prerequisite to conviction. It is the aider and abettor's state of mind, rather than the state of mind of the principal, that determines the former's liability.

493 F.2d at 1172.

In *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), the Supreme Court explicitly held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of *every fact necessary to constitute the crime with which he is charged.*" *Id.* at 364, 90 S.Ct. at 1072 (emphasis added). When the trial court fails to instruct the jury on an essential element of the offense and there is an attendant prejudice to a substantial right of the defendant, plain error has been committed. *United States v. Bosch*, 505 F.2d 78 (5th Cir. 1974); *United States v. DeMarco*, 488 F.2d 828 (2d Cir. 1973); *United States v. Small*, 472 F.2d 818 (3rd Cir. 1972); *United States v. Williams*, 463 F.2d 958 (D.C.Cir.1972); *United States v. O'Dell*, 462 F.2d 224 (6th Cir. 1972). The

failure to have the jury consider whether the defendant knew the principals were armed and intended to use their weapons clearly comes within the plain error rule. Because I find that the defendant's due process and trial by jury rights have been prejudiced with respect to his conviction for aiding and abetting armed bank robbery,[4] I believe there is plain error and that the conviction should be reversed.

---

**3.** At the time this case was tried, a request for an instruction was adequate to preserve an issue for appeal in the North Carolina state courts without subsequent objection. N.C.Gen. Stat. § 15A–1231(d). Having requested an instruction, the attorney may have thought that the issue was adequately preserved as it would have been in a state court. *But see* Rule

10(b)(2) of the North Carolina Rules of Appellate Procedure, effective October 1, 1981.

**4.** The convictions for aiding and abetting larceny and bank robbery could not be attacked successfully on this ground even if they had been appealed.