36 F.3d 1094
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael Anthony BELL, Defendant-Appellant.
 No. 92-5268.
 United States Court of Appeals, Fourth Circuit.
 Submitted Sept. 13, 1994.
Decided Sept. 27, 1994.
 
 Appeal from the United States District Court for the District of South Carolina, at Aiken. Charles E. Simons, Jr., Senior District Judge. (CR-91-189)
 Parks N. Small, Federal Public Defender, Columbia, SC, for appellant.
 J. Preston Strom, Jr., U.S. Atty., David C. Stephens, Asst. U.S. Atty., Harold W. Gowdy, III, Asst. U.S. Atty., Greenville, SC, for appellee.
 D.S.C.
 AFFIRMED. Before MURNAGHAN, HAMILTON, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Michael Anthony Bell appeals his conviction and sentence on charges of conspiracy to possess with the intent to distribute, and distribution of cocaine and cocaine base, and substantive counts of possession with intent to distribute and distribution of cocaine and cocaine base in violation of 21 U.S.C. Secs. 841(a)(1), 846 (1988).[1] Twenty kilograms of powder cocaine and five kilograms of crack cocaine were attributed to Bell, based on trial testimony. He was sentenced under the sentencing guidelines to life imprisonment, based in part on a base offense level of forty-three.[2]
 
 
 2
 Bell raises three issues on appeal, by counsel. First, he asserts that the trial court's jury instruction on reasonable doubt was plainly erroneous. Second, Bell contends that the trial court should have given a conspiracy defense instruction that told the jury that a defendant could not conspire with only a government informant. Third, he asserts that the amount of drugs attributed to him is not supported by the record.
 
 
 3
 In addition, Bell filed a pro se motion for permission to file a supplemental brief, raising various issues of judicial and prosecutorial misconduct, and alleging effective assistance of counsel. For the reasons stated below, we affirm Bell's conviction and sentence.
 
 
 4
 * The charges arose out of a long term investigation of alleged narcotic dealing by a group of individuals in and around Beech Island, South Carolina. Federal and state agents used a confidential informant, Johnny Mae Terrell, to infiltrate the drug ring. Terrell began undercover work on November 5, 1990, at which time she met with Bell, and purchased approximately two ounces of powder cocaine.
 
 
 5
 Terrell testified at trial that she had been dealing with this drug organization through her boyfriend, Shorty Palmer, for approximately six years prior to working undercover. Terrell knew through Palmer's drug dealings with Bell that Bell's source of multi-kilograms of cocaine was Jose Gutierrez. Based on the November 5th two ounce deal, approximately $1300 cash was transferred from Terrell to Bell. This was the beginning of a series of extensive taped conversations, introduced at trial, between Terrell and Bell in which Bell revealed the mechanics and success of the operation.
 
 
 6
 Terrell met Bell again on November 8, 1990; Bell sold Terrell another ounce of powdered cocaine. On December 10, 1990, Terrell went with Bell to see Gutierrez, and they discussed in detail the purchase of a kilogram of cocaine for a quoted price of $28,000. The deal was not consummated at that time. Two days later, Terrell and Bell went to find approximately twenty ounces of crack, which was to have been left by Gutierrez for Bell at a predetermined spot along a dirt road, to no avail. On December 14, 1990, Terrell purchased two ounces of crack from Bell. At this time, Bell made a statement to Terrell that Gutierrez had five kilograms of cocaine, and he was going to "cook" them up. Finally, on March 27, 1991, Terrell set up a reverse buy of cocaine to Bell involving two kilograms of cocaine. Bell was arrested after he made this buy.
 
 
 7
 In addition to the taped conversations, Terrell testified to the extensive negotiations and deals conducted between Bell and Palmer.
 
 
 8
 Angelo and Timothy Coker also testified that Bell was a cocaine distributor. Angelo testified that in 1988, he and Bell bought a kilogram of cocaine from Palmer. Angelo and Bell then each cooked their half kilo. In addition, Angelo testified to having purchased two kilograms of powder cocaine from Bell on another occasion. Timothy testified that Bell got four ounces of crack from the Cokers in 1988, and on another occasion, Timothy cooked a quarter kilogram of cocaine with Bell. Timothy Coker further testified to obtaining two kilograms of cocaine from Bell.
 
 
 9
 Palmer testified that he dealt cocaine with Bell from 1986 to 1989. Palmer also testified that Bell, Coleman, and Johnson would "cook up" cocaine, and sell it. Palmer testified to having purchased cocaine from, and sold cocaine to, Bell on numerous occasions.
 
 
 10
 At the sentencing hearing, the government introduced Bell's taped statement in which, referring to Gutierrez, he said, "Yeah, they brought him 5 key ... but the price was not right on them." Terrell then asked, "Well you gonna cook some more up?" Bell responded, "I'm gonna try and cook every one of those ... up."
 
 II
 
 11
 Bell first claims plain error in the trial court's jury instruction on reasonable doubt.[3] The district court has broad discretion in determining the wording of the jury charge. United States v. Piche, 981 F.2d 706, 712 (4th Cir.1992), cert. denied, 61 U.S.L.W. 3772 (U.S.1993). There is no abuse as long as the instruction given adequately and accurately covers the substance of the requested instruction. United States v. Pupo, 841 F.2d 1235, 1240 (4th Cir.), cert. denied, 488 U.S. 842 (1988).
 
 
 12
 This Court has held that district courts are loathe to define reasonable doubt, absent a request from the jury. United States v. Reives, 15 F.3d 42, 45, 46 (4th Cir.) ("[W]e reaffirm our longstanding, albeit forgiving, proscription against any attempts to define reasonable doubt to jurors."), cert. denied, 62 U.S.L.W. 3825 (U.S.1994); United States v. Love, 767 F.2d 1052, 1060 (4th Cir.1985), cert. denied, 54 U.S.L.W. 3484 (U.S.1986). However, in cases where an instruction was given, we examine the instructions as a whole to determine whether the instruction was "prejudicially misleading or confusing." United States v. Reives, 15 F.3d at 45.
 
 
 13
 Recently, the United States Supreme Court has again addressed, and upheld, the validity of jury charges that include language attempting to define reasonable doubt. In Victor v. Nebraska, 62 U.S.L.W. 4179 (U.S.1994), the Supreme Court reiterated its previous holding in Holland v. United States, 348 U.S. 121, 140 (1954), that the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof, so long as " 'taken as a whole, the instructions ... correctly convey the concept of reasonable doubt to the jury.' " Victor v. Nebraska, 62 U.S.L.W. at 4185 (quoting Holland, 348 U.S. at 140). The Supreme Court upheld as constitutional jury instructions: (1) which taken as a whole, correctly conveyed the concept of reasonable doubt; and (2) where there was no "reasonable likelihood" that the jury understood the instructions to allow a conviction based on proof insufficient to meet the Winship standard.[4] Id. (citing Estelle v. McGuire, 502 U.S. 62, and n. 4 (1991) (holding that whether the instruction "could have" been applied in an unconstitutional manner is not the proper inquiry)).
 
 
 14
 Here, during the jury charge, the trial court stated: "[T]hat is not my definition of a reasonable doubt. I think everyone of you being intelligent people know what reasonable doubt means, and you know when what proof beyond a reasonable doubt means." The trial court later stated:
 
 
 15
 Again, I say proof beyond a reasonable doubt means just what it means to a layman, nothing particularly technical about it insofar as the law is concerned. I did tell you that the prosecution is not required to prove a defendant guilty to an absolute certainty, or beyond all doubts, just beyond a reasonable doubt. And please remember that no defendant is to be convicted on mere suspicion, or conjecture.
 
 
 16
 Bell claims that the trial court attempted to define reasonable doubt in the latter reasonable doubt instruction, thereby deviating from the proscription against defining the standard, and resulting in jury confusion as to the appropriate standard. Specifically, Bell asserts that the judge's charge in this case set the standard of proof as something less than "absolute certainty" and something more than "mere suspicion, or conjecture." He contends that the charge at issue is constitutionally deficient even under the guidelines set out in Victor v. Nebraska.
 
 
 17
 Here, the district court addressed the presumption of innocence several times, and repeatedly referred to the Government's obligation to prove each element of the charges beyond a reasonable doubt. In addition, immediately before making the statements that are the basis for the present appeal, the district court charged, "[b]ut this presumption of innocence alone is sufficient to require that [you] acquit a defendant unless or until you are satisfied beyond a reasonable doubt of a defendant's guilt from all the evidence in this case."
 
 
 18
 We find that the reasonable doubt instruction in this case was not misleading or confusing to the jury such that there was a reasonable likelihood that the conviction was based on insufficient proof, and when viewed in the context of the charge as a whole, the instruction " 'correctly convey[ed] the concept of reasonable doubt.' " See Victor v. Nebraska, 62 U.S.L.W. at 4185; United States v. Reives, 15 F.3d at 45. Accordingly, we uphold the instruction as constitutionally valid, and find no plain error in the district court's reasonable doubt instruction.
 
 III
 
 19
 Bell's second challenge on appeal is that the failure of the trial court to give a jury instruction that conspiring with a government agent only is not a conspiracy was plain error. Bell admits that he failed to ask for such an instruction at trial, but asserts that the failure to give such an instruction was plainly erroneous.
 
 
 20
 The plain error doctrine is used only where the error is " 'particularly egregious,' " and in " 'those circumstances in which a miscarriage of justice would otherwise result.' " United States v. Mitchell, 1 F.3d 235, 239 (4th Cir.1993) (quoting United States v. Young, 470 U.S. 1, 15 (1985)).
 
 
 21
 Bell was indicted along with four other Defendants, in an indictment that alleged a conspiracy dating back to 1979. In addition, there was ample evidence to support a jury's finding of a conspiracy between Bell and each of the co-Defendants. Specifically, the Cokers testified that Bell was involved in transactions with them, Johnson, and Perry, involving over fifteen kilograms of crack and powder cocaine. Palmer testified to conducting extensive drug deals with Bell. Palmer also testified that Bell and Coleman would "cook up" cocaine, and sell it.
 
 
 22
 Evidence was introduced through several witnesses that Gutierrez was the source of Bell's cocaine. Angelo Coker testified to having several drug deals with Bell, and to have seen Bell conducting deals with Perry. Terrell testified that she drove with Bell to Coleman's house to transact a drug deal. Terrell further testified to extensive negotiations and drug deals conducted between Bell and Palmer.
 
 
 23
 Moreover, the trial court thoroughly set out the elements required to prove conspiracy. While Bell is correct that the only cocaine actually introduced into evidence was cocaine that passed between Bell and Terrell, the testimonial evidence from Bell's co-Defendants amply supported the finding of a conspiracy between Bell and the co-Defendants. Given the overwhelming evidence in this case, and the instructions given to the jury, we find that the failure to give an instruction as to the fact that a defendant cannot conspire with a government agent was not plain error.
 
 IV
 
 24
 Bell next asserts that the trial court erred in its determination of the amount of crack and powder cocaine attributable to Bell for purposes of sentencing under United States Sentencing Commission, Guidelines Manual, Secs. 1B1.3, 2D1.1 (Nov.1991). Bell lodged an objection to this calculation in the Presentence Investigation Report (PSR), and objected at sentencing. The PSR attributed twenty kilograms of cocaine hydrochloride and five kilograms of crack to Bell, based on trial testimony.
 
 
 25
 The probation officer who prepared the PSR assigned Bell a base offense level of forty, based on the quantity of narcotics, and adjusted the level upward by three points for Bell's role in the offense as a manager or supervisor pursuant to U.S.S.G. Sec. 3B1.1(b) (Nov.1991). Bell contends that the record supports only one kilogram of crack and ten kilograms of powder cocaine attributable to him, resulting in a base offense level of thirty-six, a total offense level of thirty-nine, and an imprisonment range of 262 to 327 months.
 
 
 26
 A factual finding in the determination of a guidelines sentence is reviewed by this Court under a clearly erroneous standard. United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir.1989). In determining the base offense level, the district court should consider relevant conduct, including conduct taken in concert with others, that was "reasonably foreseeable." U.S.S.G. Sec. 1B1.3 comment (n.1). Under the guidelines, actions which are part of a "common scheme or plan" properly may be considered in sentencing a defendant, even if those actions were not included in the indictment or conviction. U.S.S.G. Sec. 1B1.3(a)(2) (Nov.1991); United States v. McNatt, 931 F.2d 251, 258 (4th Cir.1991), cert. denied, 60 U.S.L.W. 3478 (U.S.1992); United States v. Williams, 880 F.2d 804, 806 (4th Cir.1989). In determining which conduct appropriately is considered, the district court should review the nature of the defendant's acts, his role, and the number and frequency of those acts, as well as the similarity, regularity, and temporal proximity between the offense of conviction and the uncharged conduct. United States v. Mullins, 971 F.2d 1138, 1144 (4th Cir.1992)).
 
 
 27
 Bell asserts on brief that there is no "evidentiary connection" with the five kilograms of cocaine Bell stated he was "gonna try and cook," other than his bare statement. We find that Bell's statement is sufficient. Moreover, evidence was introduced at trial to fully support the trial court's determination that Bell was involved with numerous cocaine and crack distributions during the time period covered in the indictment. Bell's role in the uncharged drug transactions, along with the frequency and regularity of the transactions as established by the testimony of several other indicted individuals, establishes that the transactions were a continuation of the same course of conduct for which Bell was indicted and convicted.
 
 
 28
 The district court's determination attributing twenty kilograms of powder cocaine and five kilograms of crack cocaine to Bell pursuant to the guidelines is not clearly erroneous. Accordingly, we affirm Bell's sentence.
 
 V
 
 29
 We have reviewed Bell's pro se claims of judicial and prosecutorial misconduct, and find them to be without merit. As to Bell's claims of ineffective assistance of counsel, it does not conclusively appear from the record that defense counsel failed to provide effective representation, and therefore the claim is not cognizable on direct appeal. See United States v. DeFusco, 949 F.2d 114, 120-21 (4th Cir.), cert. denied, 60 U.S.L.W. 3717 (U.S.1991); United States v. Fisher, 477 F.2d 300, 302 (4th Cir.1973); United States v. Mandello, 426 F.2d 1021, 1023 (4th Cir.1970).
 
 
 30
 Accordingly, we grant Bell's motion to file his supplemental brief, and affirm his conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 31
 AFFIRMED.
 
 
 
 [1]
 Bell's co-Defendants were Jose Gutierrez, Bobby Coleman, Roy Johnson, and Bobby Perry
 
 
 [2]
 Specifically, the trial court sentenced Bell to life imprisonment on Count One; a twenty-year term of imprisonment on each of Counts Two and Three, to run concurrently to each other and to the sentence imposed under Count One; a ten-year term of imprisonment on Count Five, to run concurrently with the sentences imposed under Counts One, Two, and Three; and a five-year term of imprisonment on Count Seven, to run concurrently with the sentences imposed in the other Counts. In addition, the trial court sentenced Bell to supervised release for a term of five years as to Count One, three years as to Counts Two and Three, five years as to Count Five, and four years as to Count Seven, all to run concurrently with each other. The trial court waived payment of the fine based on Bell's inability to pay, and ordered payment of the mandatory $250 special assessment
 
 
 [3]
 Bell failed to object to the instruction at trial. See United States v. McCaskill, 676 F.2d 995, 997 (4th Cir.), cert. denied, 459 U.S. 1018 (1982)
 
 
 [4]
 See In re Winship, 397 U.S. 358 (1970) (holding that the government must prove beyond a reasonable doubt every element of a charged offense)