STATE OF NORTH CAROLINA v. PATRICK LOREN TOWE

No. COA10-401

(Filed 15 March 2011)

**1. Evidence— examining doctor's testimony—sexual abuse —no physical signs—impermissibly bolstered victim's credibility**

The trial court committed plain error in a sexual offense with a child and statutory rape case by allowing a doctor who examined the juvenile victim to testify that the victim was sexually abused but showed no physical symptoms of abuse. The testimony impermissibly bolstered the victim's credibility in the eyes of the jury.

**2. Evidence— prior crimes or bad acts—purpose for which evidence offered—at issue**

The trial court failed to properly admit evidence of defendant's prior bad acts for the purpose of demonstrating a common plan or scheme where the trial court failed to determine whether the purposes for which the evidence was offered were at issue.

**3. Appeal and Error— sentencing—issues not addressed— new trial**

The Court of Appeals declined to address defendant's arguments with respect to his criminal sentence in a sexual offense with a child and statutory rape case where defendant was given a new trial.

Appeal by Defendant from judgments and orders entered 10 November 2009 by Judge Ronald E. Spivey in Surry County Superior Court. Heard in the Court of Appeals 28 September 2010.

*Attorney General Roy Cooper, by Assistant Attorney General Laura E. Crumpler, for the State.*

*Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Daniel R. Pollitt, for Defendant-appellant.*

HUNTER, JR., Robert N., Judge.

Defendant argues the trial court committed reversible error in both the guilt–innocence and sentencing phases of his trial. For the

following reasons, we grant Defendant a new trial and address several issues that are likely to arise on remand.

## I. Factual and Procedural Background

A Surry County grand jury indicted Defendant for three counts of first-degree sexual offense with a child under thirteen (N.C. Gen. Stat. § 14-27.4(a)(1)) and two counts of first-degree statutory rape of a child under thirteen (N.C. Gen. Stat. § 14-27.2(a)(1)). Defendant entered pleas of not guilty to all charges.

The uncontested evidence at trial tended to show the following. Between 1994 and 1999, Defendant and Susan Barnhart were married and had three children: two sons and a daughter named "Shirley."[1] In 1999, Defendant and Ms. Barnhart separated, and their divorce was finalized in 2003. After the divorce, Shirley and her two brothers lived with Shirley's mother. Defendant lived with his mother, Dana Mitchell (Defendant's girlfriend), and Ms. Mitchell's three children in a two-bedroom apartment in Mount Airy. In the summer of 2007, Shirley and her two older brothers lived with Defendant in the apartment. There were approximately nine people sleeping there at that time: Shirley, her two brothers, Defendant, Defendant's mother, Ms. Mitchell, and Ms. Mitchell's three children. Shirley slept with Ms. Mitchell's oldest daughter in one bedroom, Defendant's mother slept in the other bedroom, and everyone else slept in the living room, which served as a make-shift bedroom. Shirley returned home to live with her mother in August of 2007.

The State's evidence tended to show the following. On 1 November 2007, Ms. Barnhart took Shirley to see Dr. Sarah Ryan because Shirley was having abdominal pains. (Ms. Barnhart thought Shirley might be starting her menstrual cycle.) During the physician visit, Dr. Ryan noticed irritation and redness near the lower vaginal area and a "shiny" line that could have been a scar; this prompted her to ask if there had been any abuse. Prior to this moment, Shirley did not tell anyone her father had sexually abused her, and both Shirley and her mother initially denied any sexual abuse had occurred. But when Shirley and her mother went to the bathroom at the doctor's office, Shirley told her mother that Defendant touched her "private area" all the time. Shirley and her mother returned to Dr. Ryan's office, and Shirley told Dr. Ryan that Defendant had "been inserting his fingers into her vagina."

---

1. A pseudonym conceals the victim's identity.

The following day, Shirley's mother took Shirley to the Mount Airy Police Department to file a report, where Officer Vanessa Vaught interviewed Shirley. Officer Vaught testified Shirley told her that Defendant had touched her (Shirley's) genital area, digitally penetrated her vagina, held her down when she asked him to stop, rubbed his penis on her genitals, and asked if he could put his penis in her vagina.

Several weeks later, Shirley was taken to Wake Medical Center's child sexual abuse team, where clinical social worker Nicole Alderfer interviewed her. Ms. Alderfer testified Shirley told her that Defendant had digitally penetrated her vagina, fondled her breasts, engaged in genital to genital contact, and engaged in penile–vaginal penetration.

Ms. Alderfer also testified as follows:

Q: Ms. Alderfer, did [] Ms. Susan Barnhart, did she disclose to you the nature of the abuse that had [sic] reported thus far?

A: This is how she first became aware of the abuse, because of the doctor's appointment.

Q: What specifically did she say the allegations of abuse were to that point?

A: That [Shirley] had been sexually abused by her father.

Shirley underwent a physical examination on the same day she was interviewed by Ms. Alderfer. Dr. Denise Everett, who examined Shirley, testified the genital examination revealed a normal hymen. Dr. Everett also testified that a tear in the hymen could heal within a day or two, and a nine-year-old girl could heal from trauma such that there would not be any evidence of prior trauma. She stated that even though there were no signs of physical injury to Shirley's genital area, the hymen could appear normal even after penetration by a penis. She also testified that the "lack of any findings would not be inconsistent with sexual abuse."

The following exchange occurred between Dr. Everett and the prosecutor:

Q: And do you have an opinion, ma'am, based upon your knowledge, experience and training, and the articles that you have read in your professional capacity as to the percentage of children who report sexual abuse who exhibit no physical findings of abuse?

A: I would say approximately 70 to 75 percent of the children who have been sexually abused have no abnormal findings, meaning that the exams are either completely normal or very non-specific findings, such as redness.

Q: And that's the category that you would place [Shirley] in; is that correct?

A: Yes, correct.

Defendant's former sister-in-law, Bridget Dawn Leftwich, also testified Defendant had touched her inappropriately in 1997, when she was ten. Specifically, Ms. Leftwich stated that in early December of 1997, Defendant picked her up and took her into another room and "started rubbing [her] vagina." She stated that Defendant rubbed her vagina for "probably five to ten minutes" and then left the room without saying anything. The trial court admitted this evidence, over Defendant's objection, to establish Defendant's identity as the perpetrator and motive to commit the crime.

Defendant did not testify, but he offered testimony from Ms. Mitchell and Rebecca Peters—the social worker who investigated Defendant after Shirley's allegations. Both testified they did not witness any sexual abuse. Ms. Mitchell testified she was present "all the time" during the summer of 2007 and never saw Defendant sexually abuse Shirley. Ms. Peters testified Defendant denied ever touching Shirley inappropriately and agreed to cooperate with the Department of Social Services. Ms. Peters also testified she made "approximately" one visit per week, until March of 2008, after which she did not make any more visits to Defendant's residence.

After an eight-day trial, the jury convicted Defendant of three counts of first-degree sexual offense on a child under the age of thirteen and two counts of first-degree rape of a child under the age of thirteen. The trial court sentenced Defendant to consecutive sentences of 346-425 months in prison for his two convictions of first-degree rape of a child and 346-425 months in prison for his three convictions of first-degree sexual offense. The trial court found Defendant had been convicted of an aggravated offense and ordered him to register as a sex offender and enroll in satellite based monitoring ("SBM") for the remainder of his life.

## II. Jurisdiction

Defendant gave oral notice of appeal on the date of his conviction and sentencing. Because Defendant entered a plea of not guilty as to all charges, he was entitled to appeal his conviction as a matter of right, and we have jurisdiction over the appeal of his conviction. *See* N.C. Gen. Stat. § 7A-27(e) (2009) ("From any . . . order or judgment of the superior court [not described in N.C. Gen. Stat. § 7A-27] from which an appeal is authorized by statute, appeal lies of right directly to the Court of Appeals."); N.C. Gen. Stat. § 15A-1444(a) (2009) ("A defendant who has entered a plea of not guilty to a criminal charge, and who has been found guilty of a crime, is entitled to appeal as a matter of right when final judgment has been entered.").

Because we have held SBM orders are civil in nature, Defendant was required give notice of appeal of the SBM order pursuant to N.C. R. App. P. 3(a) to confer jurisdiction on this Court. *State v. Brooks*, —— N.C. App. ——, ——, 693 S.E.2d 204, 206 (2010). Recognizing that he has failed to comply with Rule 3(a), Defendant asks us to treat his brief as a petition for certiorari. In the interest of justice, we allow Defendant's petition for certiorari and elect to review the civil orders pertaining to lifetime sex offender registry and SBM.

## III. Analysis

A. Expert Testimony

[1] Defendant argues Dr. Everett's testimony impermissibly bolstered Shirley's credibility in the eyes of the jury. Defendant failed to object to the testimony at trial; therefore, he must establish the trial court committed plain error. N.C. R. App. P. 10(a)(4).

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982)) ("Iterations in original). We must determine whether, absent the alleged error, the "jury probably would have returned a different verdict." *State v. Davis*, 321 N.C. 52, 59, 361 S.E.2d 724, 728 (1987). The error must be so grave as to have "denied the defendant a fair trial and quite probably tilted the scales against him." *State v. Collins*, 334 N.C. 54, 62, 431 S.E.2d 188, 193 (1993).

Under the North Carolina Rules of Evidence, a qualified expert may testify as to her opinion in her field of expertise if the testimony will assist the jury in understanding the evidence. N.C. R. Evid. 702(a). An expert may not, however, testify as to the witness's credibility or state that she believes the defendant is guilty. *State v. Heath*, 316 N.C. 337, 341-42, 341 S.E.2d 565, 568 (1986).

In sexual abuse cases involving child victims, an expert may not testify that sexual abuse has occurred without physical evidence supporting her opinion. *State v. Stancil*, 355 N.C. 266, 266-67, 559 S.E.2d 788, 789 (2002) (per curiam). An expert may not testify that the child has been "sexually abused" if the testimony is based solely on the interview with the child-victim. *State v. Grover*, 142 N.C. App. 411, 419, 543 S.E.2d 179, 183, *aff'd per curiam*, 354 N.C. 354, 553 S.E.2d 679 (2001). But expert testimony is not inadmissible solely because it supports the witness's credibility or "states an opinion that abuse has occurred." *State v. Dick*, 126 N.C. App. 312, 315, 485 S.E.2d 88, 89 (1997). If an expert has a "proper foundation," she may testify as to the characteristics of sexually abused children and whether a particular victim has symptoms "consistent therewith." *Stancil*, 355 N.C. at 267, 559 S.E.2d at 789; *see also State v. Bush*, 164 N.C. App. 254, 258, 595 S.E.2d 715, 718 (2004) (stating "consistent therewith" testimony is permissible "to inform the jury that the lack of physical evidence of abuse is not conclusive that abuse did not occur").

Defendant contends Dr. Everett's testimony amounted to a statement that Shirley had been the victim of sexual abuse. Dr. Everett stated seventy to seventy-five percent of sexually abused children show no clear physical signs of abuse. When asked whether she would put Shirley in that group, Dr. Everett responded that she would. Thus, Dr. Everett testified Shirley was sexually abused, but showed no physical symptoms of abuse. *Stancil* plainly prohibits this type of testimony.

STATE v. TOWE

[210 N.C. App. 430 (2011)]

The dispositive issue, then, is whether the trial court's failure to intervene *sua sponte* constituted plain error. This Court has previously found plain error in similar cases when the victim's credibility is critical because there is little or no other direct evidence of sexual abuse. *See State v. Delsanto*, 172 N.C. App. 42, 44-49, 615 S.E.2d 870, 872-75 (2005) (finding plain error and providing an extensive discussion of case law on this point); *State v. Ewell*, 168 N.C. App. 98, 105-06, 606 S.E.2d 914, 919-20 (2005) (finding plain error where "the only evidence linking defendant to [victim] were her statements and other witnesses' corroborative testimony"); *State v. Bush*, 164 N.C. App. 254, 259, 595 S.E.2d 715, 718-19 (2004) (finding plain error where victim's "credibility was questionable as to the sexual abuse for a number of reasons" and physician's testimony amounted to "a stamp of credibility"); *State v. Couser*, 163 N.C. App. 727, 731, 594 S.E.2d 420, 423 (2004) (finding plain error because State's only direct evidence of abuse was victim's testimony, which was corroborated by other witnesses). Dr. Everett's testimony placed a stamp of approval on Shirley's testimony. Without the doctor's testimony, it is highly plausible that the jury could have reached a different result. We hold the admission of Dr. Everett's testimony amounted to plain error. Below, we address several issues that may arise during Defendant's new trial. *See, e.g., Coleman v. Coleman*, 89 N.C. App. 107, 109, 365 S.E.2d 178, 180 (1988) ("ddressing non-dispositive issues "likely to arise on remand").

B. Uncharged Conduct Evidence

[2] Defendant argues Ms. Leftwich's testimony was inadmissible under North Carolina Rules of Evidence 401-404. We decline to analyze in detail whether the trial court erred in admitting the evidence because our review of the record suggests the trial court intended, but failed, to admit this evidence for the purpose of demonstrating a common plan or scheme. (The trial court remarked that the incidents were sufficiently similar for the purposes of establishing motive, identity, and *common plan or scheme*, but ultimately did not mention common plan or scheme when announcing the court's decision on Defendant's motion to exclude the 404(b) evidence or in the jury instructions.) We note, however, that the admission of this evidence was clearly problematic in at least one respect: the trial court failed to determine whether the purposes for which the evidence was offered were at issue.

STATE v. TOWE

[210 N.C. App. 430 (2011)]

While a criminal defendant's identity can always be labeled a "material fact," *State v. Jeter*, 326 N.C. 457, 458, 389 S.E.2d 805, 806 (1990), a defendant's identity is not necessarily *at issue* (*i.e.*, material) within the meaning of Rule 401, *State v. Parker*, 113 N.C. App. 216, 224, 438 S.E.2d 745, 750 (1994); *State v. White*, 101 N.C. App. 593, 600, 401 S.E.2d 106, 110 (1991); *see also* N.C. R. Evid. 401 commentary (stating that, although the statutory definition of relevance contained in Rule 401 speaks only of "relevance" by name, it contains two basic concepts: relevancy and materiality). "[T]here must be a determination of whether the identity of the perpetrator is at issue." *State v. White*, 101 N.C. App. 593, 600, 401 S.E.2d 106, 110 (1991). Our case law indicates the defendant's identity is not at issue when the case hinges on whether the alleged crime occurred, but it may be at issue when the defendant contends someone else committed the alleged crime. *Compare State v. Bagley*, 321 N.C. 201, 205-06, 362 S.E.2d 244, 246-47 (1987) (identity not at issue when defendant argued at trial that he and victim were engaged in consensual foreplay), *with State v. Thomas*, 310 N.C. 369, 374, 312 S.E.2d 458, 461 (1984) (defendant placed his identity at issue by relying on an alibi defense).[2] Admitting the evidence for the purpose of demonstrating Defendant's motive to commit the crimes charged does not pose the same problem. Motive is at issue when a defendant denies committing the crime charged. *See State v. Haskins*, 104 N.C. App. 675, 683, 411 S.E.2d 376, 382 (1991) (motive at issue when defendant denied his participation in a robbery).

Should the State seek to reintroduce the uncharged conduct evidence on remand, we trust the trial court will determine the materiality of *each* purpose for which the evidence is offered in addition to conducting the other steps in the uncharged conduct analysis. *See, e.g.*, T.M. Ringer, *A Six Step Analysis of "Other Purposes" Evidence Pursuant to Rule 404(b) of the North Carolina*

---

2. Professors Wright and Graham have addressed this issue:

> The prosecution should only be permitted to introduce evidence of other crimes under the identity exception where the question of identity is in issue. Sometimes, for example, in sex crimes the victim and the accused are well-known to each other and there is not the slightest possibility of mistaken identity; the real issue in the case is whether the crime took place. To admit evidence of other crimes under the present exception in such a case is simply an evasion of the general rule that evidence of other crimes cannot be used to prove the conduct of the defendant through an inference as to his character.

22 Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence* § 5246, 514-15 (1978) (footnotes omitted).

*Rules of Evidence*, 21 N.C. Cent. L.J. 1 (1995). The trial court should also be careful to articulate whether the evidence is admissible to establish common plan or scheme, as it appears, based on our review of the record and the parties' briefs, there was confusion on this matter below.

C. Sentencing

**[3]** Defendant raises several arguments with respect to his criminal sentence and the trial court's order requiring him to register as a sex offender and for SBM. We decline to address these arguments in detail. However, should Defendant's new trial result in conviction, we trust the trial court will ensure Defendant's rights are adequately protected during sentencing, *see, e.g.*, N.C. Gen. Stat. § 15A-1340.16(a6) (2009) (requiring 30-day written notice before trial of intent to seek a probation point); N.C. Gen. Stat. § 15A-1022.1 (2009) (providing sentencing hearing protections), and will review the pertinent SBM and sex offender registry case law, *see, e.g.*, *State v. Davison*, —— N.C. App. ——, ——, 689 S.E.2d 510, 517 (2009) (holding that only the elements of a conviction may be considered as part of SBM analysis); *State v. Treadway*, —— N.C. App. ——, ——, 702 S.E.2d 335, 348 (2010) (holding N.C. Gen. Stat. § 14-27.4(a)(1) is not an aggravated offense).

## IV. Conclusion

Defendant is entitled to a new trial because it was plain error to admit expert testimony that Shirley had been sexually abused.

New Trial.

Judges McGEE and BEASLEY concur.