STATE v. TOWE

[366 N.C. 56 (2012)]

STATE OF NORTH CAROLINA v. PATRICK LOREN TOWE

No. 121PA11

(Filed 14 June 2012)

**Evidence— expert testimony—bolstered victim's credibility—admission plain error—plain error standard**

The trial court committed plain error in a first-degree sexual offense with a child under the age of thirteen and first-degree statutory rape of a child under the age of thirteen case by admitting conclusory expert testimony on whether the juvenile victim had been sexually abused. The erroneous admission of the testimony had a probable impact on the jury's finding that defendant was guilty. The Supreme Court disavowed the formulation of the plain error test as stated in *State v. Towe*, —— N.C. App. —— (2011), and instead applied the test set out in *Lawrence*, —— N.C. ——, (2012), and *Odom*, 307 N.C. 655. The decision of the Court of Appeals was modified and affirmed.

NEWBY, J. dissenting.

On discretionary review pursuant to N.C.G.S. § 7A 31 of a unanimous decision of the Court of Appeals, —— N.C. App. ——, 707 S.E.2d 770 (2011), finding reversible error in judgments entered on 10 November 2009 by Judge Ronald E. Spivey in Superior Court, Surry County, and ordering that defendant receive a new trial. Heard in the Supreme Court on 9 January 2012.

*Roy Cooper, Attorney General, by Laura E. Crumpler, Assistant Attorney General, for the State-appellant.*

*Staples S. Hughes, Appellate Defender, by Daniel R. Pollitt, Assistant Appellate Defender, for defendant-appellee.*

EDMUNDS, Justice.

In this case, we consider whether the Court of Appeals correctly held that the trial court committed plain error when it admitted conclusory expert testimony on whether the juvenile victim had been sexually abused. The Court of Appeals found plain error and reversed defendant's convictions, concluding that "it [was] highly plausible that the jury could have reached a different result" absent the expert testimony. *State v. Towe*, —— N.C. App. ——, ——, 707 S.E.2d 770, 775 (2011). Although we hold that admission of the testimony was plain

**STATE v. TOWE**

[366 N.C. 56 (2012)]

error, the plain error standard requires a determination that the jury *probably would have* returned a different result. Accordingly, we modify and affirm the decision of the Court of Appeals.

Defendant was indicted for three counts of first-degree sexual offense with a child under the age of thirteen, in violation of N.C.G.S. § 14-27.4(a)(1), and two counts of first-degree statutory rape of a child under the age of thirteen, in violation of N.C.G.S. § 14-27.2(a)(1). At trial, the State presented evidence that defendant had been married to the victim's mother and was the father of the victim, who was nine years old at the time of the alleged offenses. The victim's mother testified that after she and defendant separated in 1999, defendant's participation in their children's lives was sporadic until early 2007, when defendant began to make regular child support payments and reestablished visitation with their children.

The victim testified that during the summer of 2007, defendant rubbed her vagina and penetrated her digitally at least three times, and climbed on top of her and put his penis in her vagina at least twice. The victim's mother related that on 1 November 2007, she and the victim went to see pediatrician Sarah Ryan, M.D. (Dr. Ryan), because the victim had been complaining of abdominal pains and because her mother had observed blood spotting in the victim's underwear and believed that her daughter may have entered menarche. Dr. Ryan described her qualifications to the jury and was accepted by the trial court as an expert in the field of pediatric medicine. She testified that she was concerned that the prepubescent victim was spotting and showing signs of having begun to menstruate, which was abnormal for a girl at her stage of physical development. During her examination of the victim, Dr. Ryan noted that the inner lips of the victim's vagina were red and inflamed. In addition, she observed "a questionable scar" at the "back of the vaginal area" or, more specifically, on the posterior fourchette, which is at the lowest part of the vagina and is distinct from the hymen. Dr. Ryan clarified that "often times you can have a line there that looks shiny. And that was why I did not want to call it a scar." Nevertheless, because the results of the physical examination indicated the possibility of sexual abuse, Dr. Ryan asked additional pertinent questions. The mother then spoke with the victim, who revealed that defendant had been touching her private parts "all the time." The victim's mother relayed this information to Dr. Ryan.

Mount Airy Police Captain Alan Freeman (Freeman) testified that he spoke with the victim's mother, who described what her daughter

had told her. Believing that the victim might be more comfortable with a female officer, Freeman followed police protocol and asked Officer Vanessa Vaught (Vaught) to interview the victim in a separate room. The victim told Vaught that her father had touched her genitals with his hand and penis and had asked if he could put his penis into her vagina. Nicole Alderfer (Alderfer) testified that she had been employed at Wake Medical Center (Wake Med) as a clinical social worker with the child sexual abuse team. After being recognized by the court as an expert in the field of clinical social work, she described an interview she had with the victim in November 2007. The victim told Alderfer that defendant had on more than one occasion penetrated her vagina with his finger and on more than one occasion penetrated her vagina with his penis. The State also elicited testimony from the younger sister of the victim's mother, who described an incident that occurred when the sister was nine years old. At that time, the victim's mother was married to defendant and was pregnant with the victim. The sister testified that, while she was visiting the victim's mother, defendant awoke her one night and carried her into the nursery, where he rubbed her underwear over her vagina.

The State also called Vivian Denise Everett, M.D. (Dr. Everett), as a witness. By the time Dr. Everett took the stand, several witnesses for the State had mentioned her in their testimony. Child Protective Services investigator Audrey Richardson, who had been assigned to the victim's case, had testified that she and others associated with the Department of Social Services routinely referred victims of suspected child sexual abuse to Dr. Everett to conduct child medical examinations. Dr. Ryan had testified that she referred female patients such as the victim to Dr. Everett because of Dr. Everett's extensive experience examining the vaginal areas of children. Alderfer had testified that, as a clinical social worker at Wake Med, she would coordinate with the child sexual abuse team, which included Dr. Everett; interview possible sexual abuse victims and their parents about their background, social history, and the details of any alleged abuse; and then provide the information from those interviews to Dr. Everett.

Following extensive questioning by the State about her education and experience, the trial court recognized Dr. Everett as an expert in the field of pediatrics and child sexual abuse. Dr. Everett testified that on 19 November 2007, she conducted a child medical evaluation of the victim. Such examinations are requested by Departments of Social Services following allegations of sexual abuse inflicted by a parent or caretaker. Dr. Everett began the process by obtaining infor-

mation from the mother regarding the victim's medical history and by remotely observing Alderfer's interview of the victim through a two-way mirror. She then conducted a physical examination of the victim. Dr. Everett testified that, aside from some small bumps on the victim's legs, the examination was normal. Her careful scrutiny of the victim's hymen revealed that the edges were thin, but no tears were to be seen. Although Dr. Everett was not asked specifically about the posterior fourchette of the victim's vagina, she stated that she did not see a scar or line of the type described by Dr. Ryan. However, she also testified that the hymen of a young girl can heal quickly after either digital or penile penetration. When asked by the prosecutor, "If there was a scar or a tear[1] to [the victim's] tissue at or near the hymen observed by Dr. Ryan on her exam on November 1, is it likely or possible that that scar could have healed by the time you saw [the victim] in your clinic?" Dr. Everett responded, "That would be possible. Because I actually saw her on November 19th, and she was seen by Dr. Ryan on November 1st."

Although most of Dr. Everett's testimony was admissible, her direct examination by the State concluded with the following exchange:

Q   Dr. Everett, do you have an opinion, ma'am, satisfactory to yourself and based upon your knowledge, training and experience, as to whether lack of physical findings in [the victim's] examination is inconsistent with having been sexually abused?

A   Yes.

Q   What is that opinion?

A   The lack of any findings would not be inconsistent with sexual abuse.

Q   Have you done research, or read treatises, or otherwise studied physical findings in children that claim sexual abuse?

A   Yes. There have been articles in the literature.

Q   And do you have an opinion, ma'am, based upon your knowledge, experience and training, and the articles that you have read in your professional capacity as to the percentage of children who report sexual abuse who exhibit no physical findings of abuse?

---

1. Earlier in the trial, both Dr. Ryan and Dr. Everett had testified explicitly that they saw no tears.

A    I would say approximately 70 to 75 percent of the children who have been sexually abused have no abnormal findings, meaning that the exams are either completely normal or very non-specific findings, such as redness.

Q    And that's the category that you would place [the victim] in; is that correct?

A    Yes, correct.

Defense counsel did not object to any of the testimony quoted above.

After the State rested its case-in-chief, defendant presented testimony from Rebecca Peters, a social worker who had interviewed defendant and his girlfriend following the allegations and who testified that defendant denied ever touching the victim inappropriately. Dana Mitchell, defendant's girlfriend, testified that she had been living with defendant at the time of the alleged offenses and that the victim had mentioned to her that she used tampons. Mitchell denied observing any inappropriate behavior between defendant and the victim. One of defendant's sons, who also had been living with defendant and defendant's girlfriend at the time of the alleged offenses, testified that he had seen no untoward contact between the victim and defendant. Defendant did not testify.

The jury found defendant guilty of all charges. The trial judge sentenced defendant to 346 to 425 months of imprisonment for the statutory rape charges, to 346 to 425 months of imprisonment for the statutory sex offenses to run consecutive to the statutory rape charges, and ordered defendant to enroll in lifetime satellite-based monitoring following his release from prison. Defendant appealed.

Before the Court of Appeals, defendant argued, *inter alia*, that the trial court committed plain error in admitting Dr. Everett's testimony that the victim was in the category of sexually abused children who do not exhibit physical signs of such abuse. The Court of Appeals agreed and ordered a new trial. *Towe*, —— N.C. App. at ——, 707 S.E.2d at 775-76. Although the Court of Appeals also addressed issues likely to arise on retrial, those matters are not before us.

In considering Dr. Everett's testimony, the Court of Appeals relied on this Court's opinion in, *State v. Stancil*, noting that "an expert may not testify that sexual abuse has occurred without physical evidence supporting her opinion" and if an expert "has a 'proper foun-

STATE v. TOWE

[366 N.C. 56 (2012)]

dation,' " the expert may testify "as to the characteristics of sexually abused children and whether a particular victim has symptoms 'consistent therewith.' " *Towe*, —— N.C. App. at ——, 707 S.E.2d at 774-75 (citing and quoting *State v. Stancil*, 355 N.C. 266, 267, 559 S.E.2d 788, 789 (2002) (per curium)). The Court of Appeals found that by placing the victim in the group of asymptomatic sexually abused children, Dr. Everett "testified [the victim] was sexually abused, but showed no physical symptoms of abuse." *Id.* at ——, 707 S.E.2d at 775. "*Stancil* plainly prohibits this type of testimony." *Id.* at ——, 707 S.E.2d at 775.

Turning then to the question of whether the trial court's failure to intervene *sua sponte* in the face of such erroneous testimony constituted plain error, the Court of Appeals noted that in light of the lack of physical evidence of sexual abuse, the case against defendant revolved around the victim's credibility. *Id.* at ——, 707 S.E.2d at 775. As a result, because "Dr. Everett's testimony placed a stamp of approval on [the victim's] testimony," the Court of Appeals determined that it was "highly plausible that the jury could have reached a different result" without the expert testimony. *Id.* at ——, 707 S.E.2d at 775. Accordingly, the Court of Appeals found that the trial court committed plain error, entitling defendant to a new trial. *Id.* at ——, ——, 707 S.E.2d at 774-75, 776.

We allowed the State's petition for discretionary review as to whether the Court of Appeals incorrectly stated and applied the plain error standard and as to whether the Court of Appeals erred when it found plain error. We conclude that the Court of Appeals mischaracterized the plain error test but nevertheless determine that, when the test is correctly stated and applied, admission of this evidence constituted plain error.

We first consider whether Dr. Everett's testimony was improper. In *Stancil*, a case in which "a thorough examination and a series of tests revealed no physical evidence of sexual abuse," we held that "[i]n a sexual offense prosecution involving a child victim, the trial court should not admit expert opinion that sexual abuse has *in fact* occurred because, absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility." 355 N.C. at 266-67, 559 S.E.2d at 789 (citations omitted). Moreover, even when physical evidence of abuse existed and was the basis of an expert's opinion, where the expert added that she would have determined a child to be sexually abused on the basis of the child's story alone even had there been no physi-

cal evidence, we found this additional testimony inadmissible. *State v. Hammett*, 361 N.C. 92, 97, 637 S.E.2d 518, 522 (2006). However, if a proper foundation has been laid, an expert may testify about the characteristics of sexually abused children and whether an alleged victim exhibits such characteristics. *Stancil*, 355 N.C. at 267, 559 S.E.2d at 789.

Here, Dr. Everett testified that she observed no injuries during her physical examination of the victim, that the victim's hymen appeared normal and smooth, and that the victim displayed no physical symptoms diagnostic of sexual abuse. Although aware that Dr. Ryan had noticed an anomaly that Dr. Ryan characterized as a "questionable" scar or line on the victim's lower vagina, Dr. Everett did not observe any physical abnormalities herself. In the absence of physical evidence of sexual abuse in this case, the only bases for Dr. Everett's conclusory assertion that the victim had been sexually abused were the victim's history as relayed to Dr. Everett by the victim's mother and the victim's statements to Alderfer that were observed by Dr. Everett——evidence that, standing alone, is insufficient to support an expert opinion that a child was sexually abused. Therefore, Dr. Everett's expert testimony was improper when she stated that the victim fell into the category of children who had been sexually abused but showed no physical symptoms of such abuse.

We next consider whether admission of this testimony constituted plain error. This Court recently conducted a comprehensive review of the plain error doctrine in *State v. Lawrence*, —— N.C. ——, 723 S.E.2d 326 (2012). Applying *Lawrence* to the case at bar, to establish plain error defendant must show that a fundamental error occurred at his trial and that the error " 'had a probable impact on the jury's finding that the defendant was guilty.' " *Id.* at ——, 723 S.E.2d at 333 (quoting *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)). "Moreover, because plain error is to be 'applied cautiously and only in the exceptional case,' the error will often be one that 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *Id.* at ——, 723 S.E.2d at 334 (alteration in original) (citation omitted) (quoting *Odom*, 307 N.C. at 660, 300 S.E.2d at 378). Accordingly, we disavow the formulation of the plain error test as stated in the Court of Appeals opinion before us and instead apply the test set out in *Lawrence* and *Odom*.

Thus, we must consider whether the erroneous admission of expert testimony that impermissibly bolstered the victim's credibility

had the "prejudicial effect necessary to establish that the error was a fundamental error." *Id.* at ——, 723 S.E.2d at 335. While the State presented testimony both from the mother, describing the behavior of the victim, and testimony from the mother's sister, presented under N.C.G.S. § 8C-1, Rule 404(b) (2009) for the limited purpose of "showing either the identity of the person who committed a crime charged in this case . . . , or that the defendant had a motive for the commission of the crime charged in this case," describing a similar sexual assault on her by defendant, this case turned on the credibility of the victim, who provided the only direct evidence against defendant. As a result, we are also persuaded that this error is one that "seriously affects the fairness, integrity, [and] public reputation of judicial proceedings." *Lawrence,* —— N.C. at ——, 723 S.E.2d at 335.

The record indicates that the victim's recitations of defendant's actions were not entirely consistent. The victim testified at trial that defendant penetrated her vagina both digitally and with his penis, and Alderfer similarly testified that the victim told her that defendant had penetrated her vagina both with his finger and with his penis. In contrast, the victim told Dr. Ryan only that defendant had penetrated her vagina with his finger and told Vaught that defendant had touched her but had not put his penis in her vagina. While the young victim's reticence in describing her experience is surely understandable, we cannot overlook these discrepancies in the record when evaluating the probable impact of Dr. Everett's testimony on the jury's verdict. *See Hammett,* 361 N.C. at 99, 637 S.E.2d at 523 (considering the consistency of a victim's statements along with other evidence presented at trial as a factor in determining whether an expert's opinion vouching for the victim's credibility constituted plain error).

When Dr. Everett was called as a witness, the State declined defendant's offer to stipulate simply that she is an expert in pediatrics and, to qualify her further as an expert on child sexual abuse, the State presented extensive evidence of Dr. Everett's education, her service as a chief resident in pediatrics at Moses Cone Hospital in Greensboro, her directorship of the child sexual abuse team at Wake Med, her teaching as a clinical professor in the Department of Pediatrics at the University of North Carolina at Chapel Hill School of Medicine, her board certification and recertifications in pediatrics, and her publications on the sexual exploitation of children. In addition, Dr. Everett testified that she had examined over five thousand children for sexual abuse, had testified in over one hundred court proceedings, and had been accepted as an expert in pediatrics and

child sexual abuse in previous Superior Court cases. When this testimony was coupled with that of other State's witnesses, Dr. Everett was presented to the jury not only as a physician who is extraordinarily well-versed and experienced in the field of child sexual abuse, but also as the doctor to whom other professionals and experts in the field routinely direct cases when such abuse is suspected. In light of Dr. Everett's unquestioned stature in the fields of pediatric medicine and child sexual abuse, and her expert opinion that, even absent physical symptoms, the victim had been sexually abused, we are satisfied that Dr. Everett's testimony stilled any doubts the jury might have had about the victim's credibility or defendant's culpability, and thus had a probable impact on the jury's finding that defendant is guilty.

We note that virtually identical testimony from Dr. Everett previously has been found to constitute reversible error. In *State v. Bates,* the defendant was charged with indecent liberties. 140 N.C. App. 743, 744-45, 538 S.E.2d 597, 598-99 (2000), *disc. rev. denied,* 353 N.C. 383, 547 S.E.2d 20 (2001). The alleged victim in *Bates* exhibited no physical symptoms, and Dr. Everett based her expert opinion that sexual abuse had occurred solely upon the victim's statements to a psychologist with the Wake Med sexual abuse team. *Id.* at 748, 538 S.E.2d at 600-01. The Court of Appeals found that Dr. Everett's testimony lacked a proper foundation, concluded that the erroneous admission of the testimony "most likely resulted in a different result than would have been reached otherwise," and ordered a new trial. *Id.* at 748-49, 538 S.E.2d at 601. However, when Dr. Everett properly limited her testimony in a later case by stating that her examination of the victim "was 'consistent with' " the history of sexual abuse provided by the victim, the Court of Appeals found no error. *State v. Caufman,* 184 N.C. App. 378, 646 S.E.2d 442, 2007 N.C. App. LEXIS 1448, at *2-3 (unpublished), *disc. rev. denied,* 361 N.C. 698, 652 S.E.2d 921 (2007). These cases indicate to us that both the State and Dr. Everett are aware of the permissible range of expert testimony in child sexual abuse cases.

Because defendant was prejudiced by the erroneous admission of the portion of Dr. Everett's testimony characterizing the victim as sexually abused, we affirm as modified herein the opinion of the Court of Appeals that reversed defendant's convictions and remanded the matter to the trial court for a new trial.

MODIFIED AND AFFIRMED.

Justice NEWBY dissenting.

**STATE v. TOWE**

[366 N.C. 56 (2012)]

"[P]lain error is to be 'applied cautiously and only in the exceptional case,' " *State v. Lawrence*, —— N.C. ——, ——, 723 S.E.2d 326, 334 (2012), when a review of the entire record reveals a " '*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' " *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.), *cert. denied*, 459 U.S. 1018, 103 S. Ct. 381, 74 L. Ed. 2d 513 (1982)). Despite this Court's very recent affirmance of our rigorous plain error standard in *State v. Lawrence*, the majority abruptly departs from that precedent to find plain error here in the isolated misstatement of one witness, which was clarified on cross-examination and occurred over the course of a three-day trial in which the State presented overwhelming evidence of defendant's guilt. The majority's holding places an untenable burden on our trial courts in child sexual abuse cases to unilaterally discern and correct, without the benefit of an objection, possible misstatements made during trial. Our plain error jurisprudence does not demand that result. Accordingly, I respectfully dissent.

Two months ago in *State v. Lawrence* this Court clarified plain error review, first established in *State v. Odom*. Under *Lawrence* "a defendant must demonstrate that a fundamental error occurred at trial" and "must establish prejudice that, after examination of the entire record, the error 'had a probable impact on the jury's finding that the defendant was guilty.' " *Lawrence*, —— N.C. at ——, 723 S.E.2d at 334 (quoting and citing *Odom*, 307 N.C. at 660, 300 S.E.2d at 378). Our decision in *Lawrence* reaffirmed that plain error review is to be applied cautiously and should lead to a reversal only in exceptional cases in which the error is a " '*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or 'where [the error] is grave error which amounts to a denial of a fundamental right of the accused.' " *Odom*, 307 N.C. at 660, 300 S.E.2d at 378 (quoting *McCaskill*, 676 F.2d at 1002 (brackets in original) (footnotes omitted)); *see also United States v. Olano*, 507 U.S. 725, 735-37, 113 S. Ct. 1770, 1778-79, 123 L. Ed. 2d 508, 520-21 (1993). We have also noted that plain error may exist when the error is "so fundamental as to amount to a miscarriage of justice[,] . . . probably resulted in the jury reaching a different verdict," *State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987) (citations omitted), *cert. denied*, 485 U.S. 1036, 108 S. Ct. 1598, 99 L. Ed. 2d 912 (1988), or " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings,' " *Odom*, 307 N.C. at 660, 300 S.E.2d at 378 (quoting *McCaskill*, 676 F.2d at 1002).

Applying the principles set forth in *Odom* and *Lawrence*, it is clear that Dr. Everett's statement on direct examination in this case does not rise to the level of plain error. The majority points to the following exchange on direct examination to establish that the trial court committed plain error by admitting Dr. Everett's testimony:

Q  And do you have an opinion, ma'am, based upon your knowledge, experience and training, and the articles that you have read in your professional capacity as to the percentage of children who *report* sexual abuse who exhibit no physical findings of abuse?

A  I would say approximately 70 to 75 percent of the children who have been sexually abused have no abnormal findings, meaning that the exams are either completely normal or very non-specific findings, such as redness.

Q  And that's the category that you would place [the victim] in; is that correct?

A  Yes, correct.

(Emphasis added.) The State asks for the "percentage of children who *report* sexual abuse who exhibit no physical findings of abuse" while Dr. Everett's answer seems to address the percentage of "children who *have been* sexually abused." While Dr. Everett's statement is not responsive to the question asked, a review of the entire record reveals that Dr. Everett's statement had little, if any, impact on the jury and on the jury's verdict.

The impact of this statement by Dr. Everett was mitigated by defendant's cross-examination. Defendant revisited this subject on cross-examination and clarified Dr. Everett's previous misstatement for the jury. On cross-examination, the following occurred:

Q  70 to 75 percent of the—I think the question Mr. Beal asked you, 70 to 75 percent of the findings on physical examinations of children who *allegedly* have been sexually abused come back with no abnormal findings; is that correct?

A  Correct. Yes.

Q  Thank you.

(Emphasis added.) Dr. Everett answers affirmatively the same question on cross-examination as it relates to children who report or "allege" sexual abuse. Given Dr. Everett's stature in her field, as the majority notes, the jury no doubt listened attentively to all her testi-

**STATE v. TOWE**

[366 N.C. 56 (2012)]

mony, both on direct and cross-examination, before reaching a conclusion regarding the information she conveyed. As a result, the impact of Dr. Everett's nonresponsive answer on direct examination was greatly diminished by effective cross-examination.

The jury additionally heard overwhelming evidence in this case that defendant perpetrated sexual abuse upon the victim. The jury heard testimony that the child victim in this case reported abnormal physical symptoms and independently sought medical care. Dr. Ryan testified that the victim had spotting, which is atypical in a prepubertal girl only nine years old. Further, Dr. Ryan observed during her examination that the inner lips of the victim's vagina were red and inflamed and an area of the victim's genitals appeared scarred. The abnormalities Dr. Ryan noted prompted her to question the victim about the possibility of sexual abuse, which led to the victim reluctantly disclosing that defendant had been sexually abusing her. During the three-day trial, the jury heard evidence tending to show defendant's commission of the sexual abuse from eleven witnesses for the State, including three social workers, two law enforcement officers, two doctors, and two of the victim's relatives. These witnesses helped establish defendant's motive and detailed the child's characteristics and symptoms for the jury. Given the volume of evidence presented against defendant, it cannot be asserted fairly that the entire case turned on one statement made during Dr. Everett's direct testimony.

The jury in this case heard one nonresponsive statement from Dr. Everett on direct examination. Notwithstanding that the statement was clarified and its impact mitigated on cross-examination and that the statement occurred during a three-day trial in which the State presented overwhelming evidence of defendant's guilt, the majority concludes that allowing the jury to consider that statement constitutes an error so basic, so prejudicial, and so fundamental as to amount to a miscarriage of justice. I disagree. Given the statement's clarification on cross-examination and the other evidence presented against defendant, it seems impossible that the statement " 'had a probable impact on the jury's finding that the defendant was guilty,' " or "that a fundamental error occurred at trial." *Lawrence*, —— N.C. at ——, 723 S.E.2d at 334 (quoting and citing *Odom*, 307 N.C. at 660, 300 S.E.2d at 378). This Court should remain true to our long-standing mandate to find plain error only in exceptional cases and only after a cautious application of the aforementioned standard. Because it has not done so, and as a result has left our trial judges in an untenable position, I respectfully dissent.