IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 25-912

Filed 6 May 2026

Yancey County, Nos. 23CR216749-990, 23CR235928-990

STATE OF NORTH CAROLINA

v.

BRANDAN DANIEL HUFF, Defendant.

Appeal by defendant from judgments entered 19 July 2024 by Judge Gary M. Gavenus in Yancey County Superior Court. Heard in the Court of Appeals 24 March 2026.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Lindsey W. Spain, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Nicholas C. Woomer-Deters, for the defendant-appellant.*

DILLON, Chief Judge.

Defendant Brandan Daniel Huff appeals from judgments entered upon a jury verdict finding him guilty of one count of contributing to the delinquency or neglect of a juvenile and one count of statutory rape of a person who was fifteen years of age or younger. These convictions were based on the State's evidence of a sexual encounter Defendant had with Cathy (a pseudonym) during the early morning hours of 22 January 2023 in Defendant's house. We conclude Defendant received a fair trial, free from reversible error.

## I. Background

The State's evidence tended to show as follows: In late 2022 or early 2023, Defendant came to know Cathy through her older brother. At this time, Defendant was twenty years of age; Cathy was thirteen. Sometime after being acquainted, Defendant asked Cathy for her Instagram account, which she provided to him.

Around midnight on 22 January 2023, Defendant messaged Cathy, asking if she wanted to come over to his house. Initially, Cathy did not agree because of their age difference. However, Cathy eventually agreed. Defendant picked Cathy up at her house where she lived with her mother, stepfather, and brother.

Upon arriving at Defendant's house, the two went into Defendant's bedroom, sat on his bed, watched television, and talked. At some point, Defendant leaned over and kissed Cathy on the lips. The kissing led to sexual intercourse.

Around 1 a.m., Cathy's mother called the police and reported her daughter missing. The police eventually located Cathy about an hour later, around 2 a.m., at Defendant's house where they saw her through a window sitting on Defendant's bed.

Weeks later, in mid-February 2023, a family advocate at a child advocacy center ("CAC") interviewed Cathy. Separately, an officer from the Yancey County Sheriff's Office also interviewed Cathy. CAC and the Yancey County Sheriff's Office recorded these interviews, and the State admitted them as exhibits at trial. Cathy, herself, also testified at trial to the events that occurred at Defendant's house.

Most relevant to this appeal, about a month after the incident, a pediatric

nurse practitioner examined and interviewed Cathy. The nurse practitioner testified at trial. The State also offered into evidence a child medical examination ("CME") report prepared by the nurse.

Defendant testified at trial in his own defense. He admitted he messaged Cathy and picked her up from her house around midnight and that the two watched television at his house. Defendant, however, denied having sexual intercourse with Cathy. Defendant admitted knowing Cathy was thirteen years old at the time.

After deliberating for approximately forty minutes, the jury found Defendant guilty of one count of contributing to the delinquency of a juvenile and one count of statutory rape. Defendant appeals.

## II.    Analysis

Defendant makes two arguments on appeal. We address each in turn.

### A. Improper Vouching

Defendant argues the trial court erred by allowing into evidence certain testimony of the nurse and an unredacted version of the nurse's CME report. Defendant concedes he failed to object at trial to either the nurse's testimony or the report. Defendant, though, asks we review for plain error. N.C. R. App. P. 10(a)(4).

In the recent seminal case on plain error, our Supreme Court described the plain error as involving a "three-factor test," requiring a defendant to prove three elements to prove plain error: (1) "that a fundamental error occurred at trial"; (2) that "absent the error, the jury probably would have returned a different verdict";

and (3) "that the error is an 'exceptional case' that warrants plain error review[.]" *State v. Reber*, 386 N.C. 153, 158 (2024) (citation omitted). The Court, though, focused its analysis in *Reber* on the second prong, on whether the error had a probable impact on the jury's verdict. *Id.*

The Court in *Reber* does not expound on the first prong, on what is a "fundamental error," though the Court cites to *State v. Lawrence*, 365 N.C. 506, 518 (2012), to identify the existence of a "fundamental error" as the first prong of a plain error analysis. In cases prior to *Reber*, however, our Supreme Court has suggested that an error is "fundamental" where it is shown that the error is shown to satisfy either or both the second and third *Reber* prongs, thereby suggesting that a showing that the error is "fundamental" was not thought of as a separate prong.

For instance, in 1983, when the Court first articulated a plain error test, it suggested a defendant met his burden of showing a "fundamental error" by producing evidence of *either* the second or third factors later articulated in *Reber*. Specifically, relying on a Fourth Circuit opinion, the Court in 1983 stated that a "fundamental error" is one which is *either* "so prejudicial" (the second *Reber* factor) *or* which "seriously affect[ed] the fairness, integrity or public reputation of [the] judicial proceedings" (the third *Reber* factor). *State v. Odom*, 307 N.C. 655, 660 (1983) (citing *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982)). The Court, though, went on to hold the defendant in that case had to show the error had a "probable impact" on the jury's verdict. *Id.* at 661.

The Court in *Lawrence* in 2012, however, stated a "fundamental error" is one which had a probable impact on the verdict, the factor later articulated as the second *Reber* factor. For instance, the Court expressly states "[t]o show that an error [is] fundamental, a defendant must establish prejudice, [namely that] . . . the error 'had a probable impact on the jury's finding [of guilt].' " *Lawrence*, 365 N.C. at 518. A few paragraphs later, the Court again describes "a fundamental error" as an "error [which] had a probable impact on the jury verdict." *Id.* We note the Court then describes the third *Reber* factor separately, that a defendant must *also* show the error was an "exceptional case" which "seriously affect[ed] the fairness, integrity, or public reputation of the judicial proceedings." *Id.*

In 2018, six years after *Lawrence*, our Supreme Court does describe the plain error test as having three prongs, but describes the first prong as simply that the error must have been one that occurred "at trial". *State v. Miller*, 371 N.C. 266, 269 (2018). The Court then explains that the defendant must separately show the error was "fundamental", explaining that to do so the defendant must show the error encapsulates *both* the second *and* third prongs later described in *Reber*. Specifically, the Court explains that to show plain error a defendant must show, in addition that the error occurred at trial, that "the error was 'fundamental'—*meaning that* the error 'had a probable impact on the jury's finding that the defendant was guilty' *and* 'seriously affected the fairness, integrity, or public reputation of judicial proceedings.' *Id.* (emphasis added) (citations omitted).

Six years later, in 2024, our Supreme Court decided *Reber*, separating out "fundamental" from the other two factors. *Reber*, 386 N.C. at 158. The Court, at least twice in 2025, reiterated the *Reber* view, that "fundamental" was not synonymous with "probable impact" (second factor) or with "exceptional case" (third factor). *See, e.g., State v. Allison*, 388 N.C. 664, 670 (2025) (citing *Reber*, describing that a defendant must show "(1) a fundamental error occurred at trial, (2) such error had a probable impact on the outcome, and (3) the error is an exceptional case warranting plain error review[.]"). *See also State v. Bowman*, 387 N.C. 509, 515 (2025) (same).

In sum, in *Reber* and cases since, the Court suggests that a "fundamental" error occurring at trial means something separate from the other two factors. Otherwise, the other two factors would be surplusage. That is, if the Court meant for "fundamental" to mean the same thing as the second or both the second and third factors as in previous cases, the Court would have omitted the word "fundamental" when describing the first factor.

Based on other Supreme Court cases, we construe "fundamental" as an error by the trial court which is "obvious" or "apparent". Indeed, our Supreme Court has described "plain" error as an error that, *at its base*, is an "obvious" or "apparent" error, *see State v. Collins*, 334 N.C. 54, 62 (1993); *Odom*, 307 N.C. at 660. Specifically, the Court explained in these cases that "plain error" did not "*simply* mean [an] obvious or apparent error." *Collins*, 334 N.C. at 62 (emphasis added); *Odom*, 307 N.C. at 660 (emphasis added). The requirement that a defendant show that the error is obvious

and apparent is not otherwise picked up by the *Reber* factors.

Further, our Supreme Court has described plain error as an error *by the trial court*. *See State v. Raines*, 362 N.C. 1, 16 (2007) (quoting *State v. Walker*, 316 N.C. 33, 39 (1986) (holding "[b]efore deciding that an error by the trial court amounts to 'plain error' . . . .")). Such errors could be from the "commission" of the trial court, that is, by an overt act by the trial court in giving an instruction or allowing in evidence. Or such errors could be from an "omission" by the trial court, that is, by failing to give an instruction or by failing to intervene during testimony. *See, e.g., State v. Benner*, 380 N.C. 621, 640 (2022) (noting defendant's failure to argue a trial court's omission of an instruction constituted plain error).

We must note a trial court does not always have the obligation to intervene when improper evidence is offered. Rather, it may be a matter of trial strategy by a party whether to object to certain incompetent evidence offered by the other side; in such case, the judge should not intervene but rather allow each party to try his case. *See Reber*, 386 N.C. at 157 (citation omitted) (discussing our preservation rules are designed in part to "prevent[ ] parties from [not objecting to evidence] as a matter of trial strategy and then assigning error to them if the strategy does not work").

Again, we conclude a defendant shows a fundamental error by showing the error was by the trial court, either as an act of omission or commission, that is obvious and apparent. To be obvious and apparent, it must be clear that the action is, indeed, error and that the opposing party's failure to object could not be reasonable trial

strategy.[1]

We now turn to the case at hand.

During the nurse's testimony, the State offered and the trial court admitted, without objection by Defendant, the CME report prepared by the nurse. Unlike the nurse's trial testimony, this CME report *did* contain statements which suggested the nurse's belief that Cathy had, in fact, "experience[d] . . . child sexual assault."

We first address the nurse's trial testimony that Cathy's medical history and presentment "was consistent with child sexual abuse." We note the nurse never expressly opined *in her testimony* any belief Cathy had, in fact, been sexually abused.

Our Supreme Court has held it improper for an expert to *expressly* state sexual abuse on a child "*in fact*" occurred in the absence of physical findings. *State v. Stancil*, 355 N.C. 266, 267 (2002) (per curiam) (emphasis in original). Where there is no physical evidence of sexual abuse, an expert may still "testify about the characteristics of sexually abused children and whether an alleged victim exhibits

---

[1] To illustrate, consider if the *only* evidence offered by the State was an officer's testimony about what Cathy told him about her encounter with Defendant. Clearly, the testimony would be inadmissible hearsay (assuming Cathy was available to testify). And, clearly, the evidence had a "probable impact" on the verdict, as it would have been the only evidence of Defendant's guilt, thus satisfying *Reber*'s second factor.

But Defendant would *not* be able to satisfy *Reber*'s first factor, showing it was clear from the record the trial court erred by not intervening, as it would not be clear to the trial court Defendant was failing to object for any reason other than prudent trial strategy. It may be the prosecutor chose to get the evidence in through the officer to relieve Cathy of any trauma from having to testify. And it may be Defendant's counsel chose not to object so the jury would hear about the event through the officer's hearsay testimony rather than directly from Cathy. In such case, Defendant's remedy would be to bring an ineffective assistance of counsel claim through a motion for appropriate relief at the trial court level, where his counsel could explain why no objection was lodged.

such characteristics." *State v. Towe*, 366 N.C. 56, 62 (2012) (citing *Stancil*, 355 N.C. at 267). However, an expert may not testify about said characteristics where they are based "on the . . . child's story alone[.]" *Towe*, 366 N.C. at 61.

Here, there was evidence of behavior changes in Cathy. Such evidence, when coupled with the child's testimony that she has been abused, is admissible. *See State v. Clark*, 380 N.C. 204, 212–13 (2022). We, therefore, conclude the trial court did not err in allowing the nurse's testimony at trial.

But assuming arguendo the trial court committed error by failing to intervene during the nurse's testimony, we conclude the error did not rise to plain error. Specifically, we conclude Defendant has failed to demonstrate the second factor, namely how any such error had a *probable* impact on the jury's verdict in light of Cathy's testimony of the encounter with Defendant.

We next address the trial court's admission of the nurse's CME report. Defendant does not argue the CME report was inadmissible in its entirety; he only complains that certain portions of the CME report should have been redacted before its admission. Specifically, he points to statements in the report expressing the nurse's belief that Cathy had suffered sexual abuse and statements regarding the effect the abuse had on Cathy.

In 2022, prior to *Reber*, our Supreme Court held a trial court committed plain error by allowing a nurse who had examined the alleged victim to opine that Defendant had sexually abused the alleged victim, where there was a lack of physical

evidence of abuse, even though there was evidence of behavior changes in the alleged victim. *Clark*, 380 N.C. at 213 ("Accordingly, we hold that permitting [the nurse] to testify that Jane was 'sexually assaulted' in the absence of definitive physical evidence, irrespective of testimony concerning the victim's behavioral changes, constituted plain error.").

In *Reber*, though, our Supreme Court held it was *not* plain error for the trial court not to intervene when the defendant charged with sexually abusing a child was questioned during cross-examination about a prior sexual encounter he had with another person who was drunk during that encounter. *Reber*, 386 N.C. at 163.

We conclude Defendant has failed to demonstrate that the error in allowing the unredacted CME report was a fundamental error (the first *Reber* factor). The report was thirty-four pages long, and it was not made obvious or apparent to the trial court that the report contained potentially inadmissible opinions of the nurse or other inadmissible information. It is a defendant's obligation to lodge an objection to bring such matters to the trial court's attention. Further, it may have been a matter of trial strategy not to highlight that the report contained the information of which Defendant now complains. And it appears Defendant's counsel acted strategically in not objecting, as it does not appear from the record that the jury considered the contents of the CME report as the jury came back within an hour with its verdict.

Further, we conclude Defendant has failed to demonstrate any error had a probable impact on the jury's verdict (the second *Reber* factor). Here, unlike in *Clark*,

the only statement by the nurse suggesting her belief Cathy was sexually abused was contained in the CME report and *not* in her trial testimony. The CME report was approximately thirty-four pages. Assuming the trial court had a duty to inspect the thirty-four pages on its own to search for improper statements to redact before allowing the report into evidence, we cannot say the trial court's failure rose to the level of plain error. Given the length of the report and the speed at which the jury convicted Defendant, we cannot say the unredacted admission of the report had a probable impact on the jury's verdict in this case in light of Cathy's testimony.

In sum, we conclude any error in allowing portions of the nurse's trial testimony and the portions of the CME report of which Defendant now complains on appeal, even in the aggregate, did not rise to the level of plain error.

## B. Ineffective Assistance of Counsel

Defendant alleges his trial counsel was ineffective for failing to object to the unredacted CME report.[2]

Ineffective assistance of counsel claims brought on direct review "will be decided on the merits when the cold record reveals that no further investigation is required[.]" *State v. Fair*, 354 N.C. 131, 166 (2001); *see* N.C. R. App. P. 9(a).

"[T]he right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970); *see also Strickland v.*

---

[2] Defendant also states the admission of the nurse's testimony may be due to ineffective assistance of counsel but makes no legal argument supporting this statement. N.C. R. App. P. 28(b)(6).

*Washington*, 466 U.S. 668, 686–87 (1984). A claim for "defective" assistance of counsel requires a showing the attorney's performance fell below Sixth Amendment standards, and the attorney's performance prejudiced the defendant. *Strickland*, 466 U.S. at 687. A defendant is prejudiced when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is one "sufficient to undermine the confidence in the outcome." *Id.* This standard is a *lesser* standard than the preponderance of the evidence standard. *Id.* at 694. *Stickland* notes, however, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Id.* at 690.

Here, Defendant argues the admission of the unredacted CME report prejudiced him because it contained evidence tending to arouse sympathy for the victim, which our Supreme Court deems prejudicial. *See State v. Alford*, 339 N.C. 56, 572 (1995). We disagree.

As stated above, it may be that Defendant's counsel's decision *not* to object to the unredacted CME report constituted trial strategy, as counsel did not want to draw the jury's attention to the now challenged portions of the thirty-four-page report.

But even assuming the decision by Defendant's counsel fell below the standard of effective assistance, Defendant has failed to show that a reasonable probability exists the outcome would have been different had his counsel objected. Rather, the record shows the offending portions of the report were never read into the record or

referred to during the nurse's testimony.  Further, Defendant did not object to the report which he now argues was prejudicial, and we cannot definitely say it was ever brought to the jury's attention.  *See Fair*, 354 N.C. at 168.

### III.  Conclusion

We conclude Defendant received a fair trial, free of reversible error.

NO ERROR.

Judges WOOD and GRIFFIN concur.